THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE
ASTORIA LIGHT, HEAT AND POWER COMPANY, Appel-
lant, *v.* JACOB A. CANTOR et al., Constituting the Board
of Taxes and Assessments of the City of New York,
Respondents.

**Tax — constitutional law — error to include amount due
from Federal government upon war contract in fixing assess-
ment upon capital stock of corporation for purpose of taxation
— value of real estate properly included in determining amount
of surplus deductible from assessment under section 12 of Tax
Law.**

1. It was error for the Board of Taxes and Assessments of the city of
New York, in making their assessment in 1919 against the relator for
purposes of taxation, to include therein an amount due it from the
Federal government upon a contract entered into during the recent
war for the manufacture by relator of certain equipment necessary to
the prosecution thereof which rested in open account and was not
evidenced by any instrument for the payment of money.   The exercise
by a state of power to tax amounts becoming due under such a con-
tract would hinder and embarrass the government in carrying out the
powers conferred upon it by article 1 of the Federal Constitution " to
borrow money on the credit of the United States " (Subd. 2), " to
declare war " (Subd. 11) and " to raise and support armies " (Subd. 12),
and is, therefore, prohibited.   (*M'Culloch* v. *State of Maryland,* 4
Wheat. 316; *Banks* v. *Mayor,* 7 Wall. 16, followed.   *Hibernia Savings
& Loan Society* v. *San Francisco,* 200 U. S. 310, distinguished.)

2. It is doubtful whether the indebtedness in question is com-
prehended within the language of section 3701 of the United States
Revised Statutes which provides: " All stocks, bonds, treasury notes
and other obligations of the United States shall be exempt from taxa-
tion by or under state or municipal or local authority."

3. In determining whether there are surplus profits or reserve funds
on account of which an allowance shall be made in fixing the amount
of the assessment upon the capital stock of a corporation under section
12 of the Tax Law, all of the assets of the taxpayer are to be con-
sidered " except such part   *   *   *   as shall have been excepted in
the assessment roll or shall be exempt by law."   The ordinary way
of determining whether a corporation has surplus profits or not is to

27

compute the value of all its assets and deduct therefrom all of its liabilities and thus ascertain whether the balance exceeds the amount of its capital stock. This method ought not to be departed from unless the statute clearly provides for it. It was, therefore, proper for the assessors to include the value of real estate belonging to relator in determining the amount of its surplus and to deduct from its assessment the amount of such surplus. (*People ex rel. Federal Terra Cotta Co.* v. *Purdy,* 189 App. Div. 131; affd., 229 N. Y. 519, followed.)

*People ex rel. Astoria Light, Heat & Power Co.* v. *Cantor,* 203 App. Div. 893, modified.

(Argued May 31, 1923: decided October 2, 1923.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered November 17, 1922, which affirmed an order of Special Term dismissing a writ of certiorari and confirming an assessment for purposes of taxation for the year 1920 levied upon the capital stock of the relator.

*Curtis A. Peters* and *John A. Garver* for appellant. The commissioners of taxes and assessments had no jurisdiction to assess the obligations of the United States government to the relator for material and labor furnished during the World War by the relator. (*People ex rel. Union Trust Co.* v. *Coleman,* 126 N. Y. 433; *Banks* v. *Mayor, etc.,* 7 Wall. 16; *Western* v. *City of Charleston,* 2 Pet. 465; *McCulloch* v. *Maryland,* 4 Wheat. 316; *People ex rel. Edison El. Il. Co.* v. *Assessors,* 156 N. Y. 417; *Hibernia S. & L. Society* v. *San Francisco,* 200 U. S. 310; *Dyer* v. *City of Melrose,* 215 U. S. 594; *R. R. Co.* v. *Peniston,* 18 Wall. 5; *Gillespie* v. *Oklahoma,* [U. S. Sup. Ct.] 8 Ad. Op. 211.) The relator was entitled to a deduction of $1,000,000, being so much of its surplus as did not exceed ten per cent of its capital stock, which deduction was allowed by the respondents. (*People ex rel. Federal Terra Cotta Co.* v. *Purdy,* 189 App. Div. 131; *People ex rel. Simms Magneto Co.* v. *Purdy,* 189 App. Div. 134; *People ex rel. Manhattan Ry. Co.* v. *Barker,* 165 N. Y. 305;

*People ex rel. Keppler* v. *Barker,* 22 App. Div. 120; 155 N. Y. 661.)

*George P. Nicholson, Corporation Counsel (William H. King* and *Barrett Carmody* of counsel), for respondents. The debt of $609,317.30 due from the United States government does not come within section 3701 of the United States Revised Statutes and is not exempt from taxation. (*R. R. Co.* v. *Peniston,* 18 Wall. 5; *National Bank* v. *Commonwealth,* 9 Wall. 353; *Osborn* v. *Bank of U. S.,* 9 Wheat. 738; *Hibernia S. & L. Society* v. *San Francisco,* 72 Pac. Rep. 920; 200 U. S. 310; *Webber* v. *Virginia,* 103 U. S. 344; *Dyer* v. *City of Melrose,* 215 U. S. 594; 197 Mass. 99.)   The relator was in no event aggrieved by the assessment as it was not entitled to any deduction of $1,000,000 for surplus under section 12 of the Tax Law. (*People ex rel. U. V. C. Co.* v. *Feitner,* 54 App. Div. 222; *People ex rel. Eden Musee Co.* v. *Feitner,* 60 App. Div. 282; *People ex rel. Eq. G. L. Co.* v. *Barker,* 66 Hun, 21; *People ex rel. N. F. H. P. & Tel. Co.* v. *State Board,* 65 Misc. Rep. 213; *People ex rel. B. & L. E. T. Co.* v. *Tax Commrs.,* 156 App. Div. 466; 209 N. Y. 502.)

HISCOCK, Ch. J.   During the recent war the federal government made a contract with the relator under which it was to furnish buildings, labor and materials necessary for the construction of gas masks and in payment therefor was to receive an amount equivalent to the actual cost of such buildings, labor and materials plus a reasonable amount for certain overhead charges.   The relator performed its contract, being compelled to purchase a large amount of material in the market, and as a result there was due to it from the government October 1st, 1919, the sum of $609,226.05 which rested in open account, not being evidenced by any instrument for the payment of money. The defendants in making their assessment in 1919 against the relator for purposes of taxation under the

provisions of the Greater New York charter and of section 12 of the Tax Law (Cons. Laws, ch. 60) hereafter to be quoted, included amongst its items of taxable assets the sum due from the federal government as aforesaid and this action has thus far been upheld by the courts. The relator insists that they were prohibited to do this by provisions of the Federal Constitution under the interpretation given to them by controlling decisions. The respondents not only deny this proposition but further insist that in making the said assessment against relator it was erroneously allowed a deduction of $1,000,000 on account of surplus profits and that therefore even though the inclusion of the item in question was illegal the assessment was not any too much and the relator was not aggrieved by the result even though it was reached by circuitous and mistaken paths.

The question argued by appellant involves a construction and interpretation of provisions of the Federal Constitution and, therefore, the appeal lies although no permission was obtained.

We think that the appellant is correct and that it was error to include in the assessment against the relator for purposes of taxation the amount due from the government.

Amongst the powers conferred by the Federal Constitution upon the United States government are the familiar ones " to borrow money on the credit of the United States," " to declare war " and " to raise and support armies." These provisions have been interpreted by controlling decisions to give the power not only to do the naked things therein specified but also to do those incidental things which may be necessary to the efficient performance and execution of the powers therein specifically conferred. In fact no question is here raised that the government had full power to make the contract which it did for the manufacture of gas masks as a necessary equipment in carrying on the war which had been declared and providing for our armies therein engaged.

The proposition urged by respondents is that taxation of the indebtedness due to relator from the government did not in any manner impede or interfere with the execution of these powers and that, therefore, the assessment did not come within the lines of those decisions which have settled in controlling manner that a state may not do anything thus to interfere with the execution of the powers conferred upon the federal government. It is said that the amount due from the government is simply an indebtedness due from a solvent debtor and ordinary personal property assessable and taxable by the state. We do not agree with this view. We think that the power of a state to tax the amounts becoming due under a contract with the federal government like the one in question would hinder and embarrass the government in carrying out the powers conferred by the constitutional provisions above quoted. If we should assume that a state, carried away by some species of popular passion or some fatuous theory of federal and state relations could enact a law providing that the amount coming due to one of its citizens from the federal government under such a contract as this should be taxed at fifty per cent of its amount we think no one could doubt that the federal government would be hindered and embarrassed by such action in making contracts to enable it to carry on war. It either would not be able to get persons to take such contracts or it would be compelled to add to the amount of compensation to be paid to them the extra amount which the state proposed to take by way of taxation. Either result would be a handicap and a source of hindrance and in our judgment would clearly come within the abiding principles laid down in *M'Culloch* v. *State of Maryland* (4 Wheat. 316) and *The Banks* v. *The Mayor* (7 Wall. 16). The fact that the tax might be two per cent instead of fifty per cent would alter the amount of embarrassment but not the principle involved.

422 People ex rel. Astoria L.; H. & P. Co. *v.* Cantor.

[236 N. Y. 417]          Opinion, per Hiscock, Ch. J.          [Oct.,

There is called to our attention by respondents the case of *Hibernia Savings & Loan Society* v. *San Francisco* (200 U. S. 310) which holds that the rule that states cannot tax official agencies of the federal government does not apply to obligations such as checks and warrants available for immediate use. That case does not in our opinion modify the principles which we think must be applied to the present one. Of course, a time must be reached when the proceeds of such a contract as this would lose their character as connected with and incidental to a federal contract and become the ordinary personal property of the person who has received them. That was practically what was held by the case in question. The courts took the view that the checks and warrants were the equivalent of money and that money which had passed into the possession of an individual constituted taxable property although it was the proceeds of interest which had become due on government bonds. There must be limits to, the application of the principles here invoked by the appellant and it is easy to recognize that in the case cited the limit had been passed.

It is true that in the arguments heretofore made the appellant has stressed the notion that the sum in question was due from the government for borrowed money and that, therefore, it is expressly exempt from taxation under section 3701 of the United States Revised Statutes which provides: "All stocks, bonds, treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority." We doubt whether this indebtedness is comprehended within the language of that section but we think that under the entire argument and discussion heretofore had the proposition was fairly presented that this indebtedness was exempt from taxation under the more general principles which we have discussed.

We then come to respondents' claim that the error in not excepting from assessment the item discussed, was

more than offset by another deduction of $1,000,000 which was erroneous. The relator at the time of the assessment was the owner of real estate of the value of upwards of $14,000,000 as returned to the assessors. If for the purposes of the assessment now under review this real estate was to be included as an asset the relator had a surplus which exceeded $1,000,000 and which amount it was entitled to have deducted from its assessment. The assessors did so include the value of the real estate and deduct from the amount of the assessment said sum of $1,000,000 and this calls for an interpretation of section 12 of the Tax Law upon which respondents base their contention that this allowance was erroneously made.

Said section reads as follows: " The capital stock of every company liable to taxation, except such part of it as shall have been excepted in the assessment-roll or shall be exempt by law, together with its surplus profits or reserve funds exceeding ten per centum of its capital, after deducting the assessed value of its real estate, and all shares of stock in other corporations actually owned by such company which are taxable upon their capital stock under the laws of this state, shall be assessed at its actual value."

The respondents' argument in brief is that the meaning of this section is that the assessed value of the taxpayer's real estate shall be deducted from the amount of its assets in fixing the amount of its " surplus profits or reserve funds," and that in the present case if this had been done there would have been no surplus profits or reserve funds, and that, therefore, it was erroneous to deduct $1,000,000 from the amount of relator's assessment on the theory that there were such " surplus profits or reserve funds." Counsel says that inasmuch as relator's real estate is not included in such an assessment as we are dealing with but is taxed elsewhere, if it is allowed as an item in making up surplus profits on account of which an allowance is made, there results a double

PEOPLE EX REL. ASTORIA L., H. & P. CO. v. CANTOR.

exemption. Again we are compelled to differ with the respondents' contention. We think that in determining whether there are surplus profits or reserve funds on account of which an allowance shall be made all of the assets of the taxpayer are to be considered " except such part  *  *  *  as shall have been excepted in the assessment-roll or shall be exempt by law." The ordinary way of determining whether a corporation has surplus profits or not is to compute the value of all of its assets and deduct therefrom all of its liabilities and thus ascertain whether the balance exceeds the amount of its capital stock. This method ought not to be departed from unless the statute clearly provides for it and that it does not do.

The legislature, in pursuance of what was undoubtedly a wise policy tending to promote responsibility of corporations, determined to exempt from taxation under this section their surplus profits to an amount not exceeding ten per cent of their capital. To this end it provided plainly enough that their capital stock (an unfortunate expression interpreted to mean property rather than shares of capital stock) and their surplus profits should be assessed with the exception of property excepted in the assessment roll or exempt by law and surplus profits not exceeding ten per cent of their capital. This is perfectly plain. The ambiguity of the section if any arises in connection with the provision that the foregoing assessment should be made " after deducting the assessed value of its real estate." The respondents claim that this deduction of the real estate is to be made in computing the surplus profits and that if real estate is included in computing those profits there will be a double exemption of real estate, first as part of the profits and second in the general exemption of real estate from assessment under this provision. We think this is erroneous reasoning. As we have said the policy of the legislature was to exempt a certain amount of surplus profits with no restriction, except as has been stated, upon the method in which

such surplus should be made up. The provision for deducting the assessed value of real estate is in our opinion not a limitation upon the computation of surplus profits but a limitation upon the assessment to be made under the section in question and from which the value of the real estate is deducted. The result of this is not to make a double exemption of real estate but to prevent a double taxation of it, once under this section and again under other taxing provisions.

We think this view is impliedly at least upheld by the case of *People ex rel. Federal Terra Cotta Company* v. *Purdy* (189 App. Div. 131; affd., 229 N. Y. 519).

In accordance with these views we think that the item of $609,226.05 should be deducted from the amount of plaintiff's assessment and that the order appealed from should be modified by sustaining relator's writ to this extent and reducing the amount of the assessment to $849,073.95, and as thus modified should be affirmed, with costs to the relator in all courts.

HOGAN, CARDOZO, POUND, McLAUGHLIN and CRANE, JJ., concur; ANDREWS, J., not voting.

Ordered accordingly.

---

THE SAUGERTIES BANK, Appellant, *v.* THE DELAWARE AND HUDSON COMPANY, Respondent.

Carriers — bills of lading — proximate cause — relation between act and results ordinarily question of fact — when cannot be said as matter of law that carrier should have antici-pated that old and spent bills of lading might, by crime or forgery, be utilized as security for loan.

1. The act of a party sought to be charged is not to be regarded as a proximate cause unless it is in clear sequence with the result and unless it would have been reasonably anticipated that the consequences complained of would result from the alleged wrongful act. If the con-

sequences were only made possible by the intervening act of a third party which could not have been reasonably anticipated then the sequential relation between act and results will not be regarded as so established as to come within the rule of proximate cause.

2. Ordinarily it is to be determined as a question of fact whether there has been such a connection between cause and effect as to make the former proximate.

3. Where a carrier delivered to a consignee merchandise without taking up the bills of lading, in violation of the provisions thereof and of section 365 of the Penal Law, and several months thereafter the consignee changed the dates of the bills, presented them to a bank as security for a loan which was granted thereon, and a short time thereafter failed, the bank cannot recover of the carrier the amount of its loss in the absence of a supportable finding of fact that the carrier should have anticipated what took place. Under ordinary circumstances no one is chargeable with damages because he has not anticipated the commission of crime by some third party and while the carrier in leaving the bills outstanding might be charged, under a question of fact, with anticipation that they might be presently used although the merchandise had been delivered, it cannot be said as matter of law that it ought to have anticipated that bills of lading which had become absolutely stale and useless would be resurrected into a condition of life by the crime of forgery. (*Mairs* v. *Baltimore & Ohio R. R. Co.*, 175 N. Y. 409, followed.)

*Saugerties Bank* v. *Delaware & Hudson Co.*, 204 App. Div. 211, affirmed.

(Argued June 12, 1923; decided October 2, 1923.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered January 24, 1923, affirming a judgment in favor of defendant entered upon a decision of the court at a Trial Term without a jury directing a dismissal of the complaint.

*B. Jermain Savage* for appellant. Defendant in failing to exact surrender of the bills of lading violated not only its express contract, but also the Penal Law. (*Colgate* v. *Penn. Co.*, 102 N. Y. 120; *Burham* v. *Cape Vincent Seed Co.*, 142 N. Y. 159; *Furman* v. *U. P. R. R. Co.*, 106 N. Y. 579; *First Nat. Bank* v. *Kelly*, 57 N. Y. 34.) The railroad's contract not to deliver the property covered by

order bills of lading without exacting their surrender
properly indorsed is designed to protect *bona fide* holders
of the bills from exactly this misdelivery of the property
to the consignee without obtaining the surrender of the
bills, thereby opening the door to their subsequent nego-
tiation to a lender on the faith of the railroad's contract.
(*First Nat. Bank* v. *N. Y. C. & H. R. R. R. Co.*, 85 Hun,
160; *William* v. *D. & H. Co.*, 156 App. Div. 695; *Serat* v.
*Utica, etc., Ry. Co.*, 102 N. Y. 681; *Colgate* v. *Penn. Co.*,
102 N. Y. 120; *Midland Nat. Bank* v. *M. P. R. Co.*, 132
Mo. 492; *Ratzer* v. *B. C. R. & N. Ry. Co.*, 64 Minn. 245;
*Wells, Fargo & Co.* v. *Oregon R. & N. Co.*, 32 Fed. Rep.
51.)   Defendant's violation of its contract and duty in
delivering the grain without exacting the surrender of the
order bills of lading is the cause of plaintiff's loss and
defendant is liable therefor.   (*Mortimer* v. *Otto*, 206 N. Y.
89; *Shaw* v. *R. R. Co.*, 101 U. S. 565; *Neal* v. *Rendall*,
98 Me. 69; *Ishman* v. *Dow*, 70 Vt. 588; *Salisbury* v.
*Herchenroder*, 106 Mass. 458; *Bank of Batavia* v. *N. Y.*,
*L. E. & W. R. R. Co.*, 106 N. Y. 195; *People's Trust Co.*
v. *Smith*, 215 N. Y. 489.)

*Lewis E. Carr* for respondent.   The erasure of the
original dates in the bills of lading in question and the
insertion of new and later dates therein by the consignor
and consignee, and the use of them by it in their altered
form as collateral to a loan it obtained from the plaintiff
months after it had received and converted to its use the
grain described therein, constituted and was a criminal act
committed by such consignor and consignee.   (*Ward* v.
*N. Y. C. R. R. Co.*, 47 N. Y. 29; 2 Hutchinson on
Carriers, 715, § 651; *Bank of Batavia* v. *N. Y., L. E. &
W. R. R. Co.*, 106 N. Y. 195; *Van Pelt* v. *McGraw*, 4
N. Y. 110; *Filkins* v. *People*, 60 N. Y. 101.)   The failure
of the defendant to exact from Durant & Elmore Company
the surrender to it of the bills of lading of the cars of grain
in question when it delivered them to that company, or

upon and in accordance with its orders, was not the producing cause of the loan the plaintiff made to that company May 17, 1910, or of the loss for which it brought this action. The felonious acts of that company, in erasing their original dates and inserting new and later dates after it had received and converted to its use the grant described therein, and in uttering them to the plaintiff as security for such loan, were a new and independent cause therefor which bars the claim of the plaintiff against the defendant and denies its right to recover from the defendant any part of its demand. (*Nat. Com. Bank* v. *Lackawanna Transp. Co.*, 59 App. Div. 270; 172 N. Y. 596; *Mairs* v. *B. & O. R. R. Co.*, 175 N. Y. 409; *Furman* v. *U. P. R. R. Co.*, 106 N. Y. 579; *Shaw* v. *R. R. Co.*, 101 U. S. 587.)