SMITH ET AL., PARTNERS, *v.* DAVIS ET AL., AS BOARD OF COUNTY TAX ASSESSORS OF FULTON COUNTY, ET AL.

No. 23. Argued October 16, 1944.—Decided December 4, 1944.

*Mr. Ben H. Sullivan,* with whom *Mr. John H. Connaughton* was on the brief, for petitioners.

*Mr. W. S. Northcutt,* with whom *Messrs. E. H. Sheats* and *Standish Thompson* were on the brief, for respondents.

Mr. Justice Murphy delivered the opinion of the Court.

Petitioners are partners engaged in the contracting and construction business. They claim that on January 1, 1942, the United States owed them a balance of $29,831.10. This amount was due under the terms of two contracts for work, labor and materials furnished in connection with the construction of two airports for the use of the United States Army. Petitioners state that this balance "was in the nature of an open account and represented an account receivable" in their hands.

The respondent tax officials of Fulton County, Georgia, sought to assess this open account for state and county ad valorem tax purposes.[1] Petitioners brought this action in

---

[1] Georgia Code (1933) § 92–101 subjects all real and personal property to taxation, except as otherwise provided by law, and § 92–102 includes within the definition of personal property "money due on open account or evidenced by notes, contracts, bonds, or other obligations, secured or unsecured."

a state court to enjoin such assessment, claiming that the open account was an instrumentality of the United States and hence was immune from state or county taxation. The Supreme Court of Georgia overruled the trial court's dismissal of respondents' general demurrer and directed that the petition be dismissed. 197 Ga. 95, 28 S. E. 2d 148. We granted certiorari because of the important constitutional and statutory problems inherent in the case.

I. Petitioners claim that the proposed tax on the open account claim against the United States is a tax upon the credit of the federal government and upon its power to raise money to carry on military and civil operations. Hence, it is argued, such a tax is unconstitutional under the rule, first enunciated in *McCulloch* v. *Maryland*, 4 Wheat. 316, that without Congressional action there is immunity from state and local taxation, implied from the Constitution itself, of all properties, functions and instrumentalities of the federal government.[2] We think otherwise.

In the first place, an open account claim against the United States does not represent a credit instrumentality of the federal government within the meaning of this constitutional immunity. The record here reveals only that petitioners claim that the United States owes them $29,831.10, which amount is carried by them as an account receivable and "is in the nature of an open account." There are the usual provisions of standard form government construction contracts calling for progress payments by the United States, with final payment being made after completion and acceptance of the work. There is no evidence of any bargaining for a credit extension of $29,831.10 or any provisions for the payment of interest

---

[2] *People ex rel. Astoria Light Co.* v. *Cantor*, 236 N. Y. 417, 141 N. E. 901, is cited in support of this argument.

on amounts due under the contracts. Nor is there any indication that any conditions precedent needed to be fulfilled or that, on the supposition that the amount was conceded to be correct by the United States, anything other than the formal mechanics of payment needed to be performed. We can only assume, therefore, that this is an ordinary open account as generally defined in the commercial world.[3] In other words, it is an unsettled claim or demand made by the creditor which appears in his account books. It is not evidenced by any written document whereby the United States, the debtor, has promised to pay this claim at a certain time in the future; nor is there any binding acknowledgment by the United States of the correctness of the claim. Conceivably the amount claimed to be due is incorrect or is subject to certain defenses or counterclaims by the United States, necessitating further settlement or adjustment. Such a unilateral, unliquidated creditor's claim, which by itself does not bind the United States and which in no way increases or affects the public debt, cannot be said to be a credit instrumentality of the United States for purposes of tax immunity.

In these respects a mere open account claim differs vitally from the type of credit instrumentalities which this Court in the past has recognized as constitutionally exempt from state and local taxation.[4] Such instrumentali-

---

[3] See Paton, Accountants' Handbook 229–30 (2d ed., 1934); Olson and Hallman, Credit Management 36 (1925); Jamison, Finance 56 ff (1927); *Kramer* v. *Gardner*, 104 Minn. 370, 373, 116 N. W. 925, 926.

[4] In *Bank* v. *Supervisors*, 7 Wall. 26, this Court held that Congress had the constitutional power, and exercised it, to exempt non-interest-bearing United States legal tender notes, called "greenbacks." The decision did not rest on a finding that these notes were constitutionally exempt in and of themselves. Congress thereafter enacted a statute which in effect reversed this decision and allowed such notes to be taxed by states. Act of Aug. 13, 1894, 28 Stat. 278, § 1, 31 U. S. C. § 425.

ties in each instance have been characterized by (1) written documents, (2) the bearing of interest, (3) a binding promise by the United States to pay specified sums at specified dates and (4) specific Congressional authorization, which also pledged the faith and credit of the United States in support of the promise to pay. Thus in *The Banks* v. *The Mayor,* 7 Wall. 16, immunity was granted to interest-bearing certificates of indebtedness issued to public creditors pursuant to the Act of March 1, 1862, 12 Stat. 352, and the Act of March 17, 1862, 12 Stat. 370. United States stock, bearing interest of 6% and 7%, issued pursuant to the Act of April 20, 1822, 3 Stat. 663, was declared immune in *Weston* v. *Charleston,* 2 Pet. 449. See also *Bank of Commerce* v. *New York City,* 2 Black 620, holding immune interest-bearing stock of the United States authorized by various acts of Congress,[5] and *Bank of the Commonwealth* v. *Commissioner of Taxes,* 2 Black 635, note, declaring immune United States stock, bearing not over 5% interest, authorized by the Act of June 14, 1858, 11 Stat. 365. Interest-bearing bonds of the federal government authorized by law have consistently been held immune from state and local taxation. See, for example, *Home Savings Bank* v. *Des Moines,* 205 U. S. 503. None of these cases is authority for placing an open account claim under the protective umbrella of constitutional immunity.

It is clear, moreover, that the proposed taxation of this open account will not affect or embarrass in any substantial measure the power of the United States to secure credit or to secure aid from independent contractors for necessary military and civil construction projects. The tax here is a uniform, non-discriminatory levy upon an unliquidated asset of the creditor and not upon a credit

----

[5] This case involved stock issued under the Act of April 15, 1842, 5 Stat. 473, the Act of Jan. 26, 1847, 9 Stat. 118, the Act of March 31, 1848, 9 Stat. 217, and the Act of Feb. 8, 1861, 12 Stat. 129.

instrumentality of the United States. That this asset involves a claim against the federal government is no more fatal to the validity of the tax than the fact that in *James v. Dravo Contracting Co.,* 302 U. S. 134, the tax was levied on the contractor's gross receipts from the United States or the fact that in *Alabama* v. *King & Boozer,* 314 U. S. 1, the sales tax was placed on the sale of property to a contractor for use in a federal government project. The assets of an independent contractor that are derived from the profits of a government contract stand in no preferred constitutional position so far as taxation is concerned. They too must bear their fair share of the tax burden. And as long as that burden is non-discriminatory, there is no basis for assuming that contractors will be any less willing to enter into construction contracts with the United States. Nor is such a tax likely to affect or impair in any way their ability to discharge their duties efficiently. There is thus no practical reason for immunizing open accounts of this nature from taxation.

II. The claim that an open account is an obligation exempt from taxation under the provisions of § 3701 of the Revised Statutes, 31 U. S. C. § 742, is also without merit. Congress by this section has provided that "All stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority." The plain meaning of these words and their legislative background dispel any doubt as to their inapplicability to an open account claim of a creditor of the United States.

Section 3701 on its face applies only to written interest-bearing obligations issued pursuant to Congressional authorization. Stocks, bonds and Treasury notes [6] are

---

[6] The only Treasury notes that could be included within § 3701 are interest-bearing ones, in light of the provisions of the Act of Aug. 13, 1894, 28 Stat. 278, § 1, 31 U. S. C. § 425, allowing notes and certificates payable on demand and circulating as currency to be taxed by the states.

obviously of that nature. And, under the rule of *ejusdem generis,* it is reasonable to construe the general words "other obligations," which allegedly cover open accounts, as referring only to obligations or securities of the same type as those specifically enumerated. *Hibernia Savings Society* v. *San Francisco,* 200 U. S. 310. Cf. *Helvering* v. *Stockholms Enskilda Bank,* 293 U. S. 84. This interpretation is in accord with the long established Congressional intent to prevent taxes which diminish in the slightest degree the market value or the investment attractiveness of obligations issued by the United States in an effort to secure necessary credit. It is unnecessary to extend such tax exemption, at least through statutory interpretation, to non-interest-bearing claims or obligations which the United States does not use or need for credit purposes. Tax exemptions being the exception rather than the rule, much clearer language evidencing an intent to immunize open account claims under § 3701 is necessary under these circumstances.

The seven statutory exemption provisions [7] from which § 3701 was derived further confirm the conclusion that Congress at no time intended to exempt open account claims. In all seven instances the exemption provisions appeared in statutes authorizing the issuance of interest-

---

[7] (1) Act of Feb. 25, 1862, 12 Stat. 345, 346, exempting "all stocks, bonds, and other securities of the United States"; (2) Act of March 3, 1863, 12 Stat. 709, 710, exempting "all the bonds and treasury notes or United States notes issued under the provisions of this act"; (3) Act of March 3, 1864, 13 Stat. 13, exempting "all bonds issued under this act"; (4) Act of June 30, 1864, 13 Stat. 218, exempting "all bonds, treasury notes, and other obligations of the United States"; (5) Act of Jan. 28, 1865, 13 Stat. 425, exempting "such notes" as were issued under the statute in lieu of bonds; (6) Act of March 3, 1865, 13 Stat. 468, 469, exempting "all bonds or other obligations issued under this act"; (7) Act of July 14, 1870, 16 Stat. 272, exempting "all of which said several classes of bonds [authorized to be issued under the Act] and the interest thereon."

bearing bonds or Treasury notes. Five of the seven statutes specifically limited tax exemptions to the securities issued under those enactments; one extended exemption to "all stocks, bonds, and other securities of the United States";[8] and the other granted exemption to "all bonds, Treasury notes, and other obligations of the United States." [9] Thus, if the rule of *ejusdem generis* be applied to the two latter provisions, all seven exemptions were limited by their terms to interest-bearing securities or obligations authorized by Congress, for the payment of which the credit and faith of the United States was pledged. Full effect must also be given to the subsequent statutory provision allowing states to tax "legal tender notes and other notes and certificates of the United States payable on demand and circulating or intended to circu-

---

[8] Act of Feb. 25, 1862, 12 Stat. 345, 346. This has been described in Congress as embracing "simply the public securities, such as are described as the permanent debt of the Government." Cong. Globe, p. 3184, 38th Cong., 1st Sess.

[9] Act of June 30, 1864, 13 Stat. 218. This provision comes closest to the wording of § 3701. In speaking of the term "other obligations," Rep. Hooper said during the Congressional debates on the Act that "I understand, however, that this provision applies only to the interest-bearing obligations of the Government." Cong. Globe, p. 3183, 38th Cong., 1st Sess. He also stated that the committee in charge of the bill which eventually became law "found the general practice since the commencement of the Government had been to exempt from taxation the obligations of the Government issued by the United States under loan bills." *Ibid.*

This Act, moreover, obviously used the word "obligation" throughout to refer to written documents, making provisions relating to counterfeiting, altering, printing and photographing them. And in § 13, the Act defined the words "obligation or other security of the United States," as used in this Act, to include and mean "all bonds, coupons, national currency, United States notes, treasury notes, fractional notes, checks for money of authorized officers of the United States, certificates of indebtedness, certificates of deposit, stamps, and other representatives of value of whatever denomination, *which have been or may be issued under any act of Congress.*" (Italics added.)

late as currency." [10]  All of these related statutes are a clear indication of an intent to immunize from state taxation only the interest-bearing obligations of the United States which are needed to secure credit to carry on the necessary functions of government.  That intent, which is largely codified in § 3701, should not be expanded or modified in any degree by the judiciary.

The judgment of the Supreme Court of Georgia is affirmed.

*Affirmed.*

---

[10] Act of Aug. 13, 1894, 28 Stat. 278, § 1, 31 U. S. C. § 425.  See notes 4 and 6, *supra.*