In the Matter of S. S. Silberblatt, Inc., Appellant, against Tax Commission of the State of New York, Respondent.

Third Department, December 2, 1958.

*Harold A. Jerry* and *Clyde A. Lewis* for appellant.

*Louis J. Lefkowitz, Attorney-General* (*Julius L. Sackman* and *Paxton Blair* of counsel), for respondent.

GIBSON, J.  Petitioner-appellant, the contractor for the construction of certain housing facilities at Plattsburgh Air Force Base, seeks to annul the determination of the State Tax Commission denying petitioner's application for refund of certain mortgage recording taxes paid by it, under protest, to the County Clerk of Clinton County.  A resumé of the somewhat complicated arrangement for financing the construction is necessary to analysis of the legal problem presented.

The procedure taken was that required by those provisions of the National Housing Act which were enacted to provide housing for military personnel (U. S. Code, tit. 42, § 1594 *et seq.*). The enactment contemplated the "utilization of private mortgage capital to be repaid from quarters allowances of eligible service personnel" over a period of years, it being "recognized that budgetary considerations would not permit the expenditure in 1 or 2 fiscal years of the sums needed to meet the immediate total need." (Report of House of Representatives Committee on Banking and Currency on the Housing Act of 1956 [House Report No. 2363, June 15, 1956, p. 38, 84th Cong., 2d Sess.].)

Petitioner's was the lowest bid for the construction of 1,685 family housing units at the base named. In accordance with the statute and pursuant to the provisions of a letter of acceptability issued by the Department of the Air Force, the transaction proceeded in various steps. Petitioner formed five Delaware corporations, each with a paid-in capital of $1,000, petitioner being the sole stockholder. Each of the corporations then leased from the United States certain lands within the base which together constituted the site of the project. The rental provided by each lease was the lump sum of $1,000 and the term in each case was 55 years, terminable by the United States on 60 days' notice at any time after completion and acceptance of the project. Petitioner and the five corporations entered into a housing contract with the United States, to be completed within 730 days, for the price of $27,578,000, this price to include the cost of financing. In further pursuance of the letter of acceptability and in conformance with the housing contract, the five corporations entered into building loan agreements with a bank for amounts totaling $27,578,000 and executed and delivered to the bank their several notes aggregating that amount, secured by mortgages of the leased premises. A commitment for insurance of each of the mortgage notes was indorsed thereon by the Federal Housing Commissioner (U. S. Code, tit. 12, § 1748b) and payment thereof was guaranteed by the United States. All of the capital stock of the five corporations was assigned in blank and deposited with the mortgagee bank in escrow, for delivery to the Department of the Air Force upon completion of the project and final indorsement of the mortgage notes for insurance by the Federal Housing Commissioner. The construction period provided by the contract was two years and the first principal payments became due on the notes after the termination of that period.

Upon presentation of the mortgages for recording, the County Clerk demanded payment of $137,890 as mortgage tax under section 253 of the Tax Law. Petitioner paid the amount under protest and upon the State Tax Commission's denial of its application for a refund, commenced this proceeding. The petition alleges the invalidity of the tax (1) as imposed "upon lands owned by the United States"; (2) as imposed "upon instrumentalities issued by the United States government in the performance of its governmental duties"; and (3) as "contrary to the Constitution and laws of the United States".

We deal first with respondent's contention that petitioner is not a proper party petitioner because it is not a party to the mortgages. The objection was not raised by way of defense. (Cf. Civ. Prac. Act, §§ 1291, 242.) Without reference to the question of pleading, however, we find the objection of doubtful validity. The statute (Tax Law, § 257) does not prescribe by whom the tax shall be paid. (See *People* v. *Trust Co. of America*, 205 N. Y. 74.) Petitioner, with the five corporate mortgagors, of which it was the sole stockholder, was a party to the contract, whereby it was obligated, among other things, to pay the closing expenses. It was properly the recipient of the total proceeds of the mortgages. Respondent does not suggest that there is any question but that petitioner did, in fact, pay the tax. In any event, the objection becomes academic in view of the determination we have reached upon the merits.

Petitioner asserts the existence of a specific exemption from mortgage tax by virtue of the provisions of section 511 of the Housing Act of 1956 (see U. S. Code, tit. 42, § 1594, Amendments, Savings Provisions).

The final proviso of that enactment relates "to properties leased pursuant to the provisions of section 805 of the National Housing Act as amended on or after August 11, 1955 [section 1748d of Title 12], which properties shall be exempt from State or local taxes or assessments." That the section refers to property taxes upon the leasehold interests seems clear from the language employed, as well as from the legislative history of the provision and from prior judicial treatment of the underlying problem. (See Report of House of Representatives Committee on Banking and Currency [House Report No. 2363, June 15, 1956, pp. 48-49, 84th Cong., 2d Sess.]; and *Offutt Housing Co.* v. *Sarpy County*, 351 U. S. 253, 260-261.) It has been determined that the New York mortgage recording tax is not a property tax. (*Franklin Soc.* v. *Bennett*, 282 N. Y. 79, appeal dismissed 309 U. S. 640.) It follows that the exemption pro-

vided by section 511 is inapplicable thereto. That the contracting parties did not contemplate the existence of an immunity from taxes other than real and personal property taxes is apparent from the contract documents, including the invitation for bids.

Petitioner asserts as further ground for relief its contention that the mortgages and the indebtedness secured thereby constitute direct obligations of the United States within the provisions of statute exempting from State or local taxation (except as otherwise provided by law) "all stocks, bonds, Treasury notes and other obligations of the United States." (U. S. Code, tit. 31, § 742.) In our view, the contention is unsound. Obviously the instruments are not, in form, direct obligations of the Government. To hold that they are, nevertheless, exempt as direct or primary obligations in substance and effect and "of the same type as those specifically enumerated" (*Smith* v. *Davis,* 323 U. S. 111, 117) would be to deny recognition to the directly contrary purpose and intent of the previously discussed provisions of the National Housing Act which authorized them. The Government's liability "in no way increases or affects the public debt" (cf. *Smith* v. *Davis, supra,* p. 114) nor is there a general pledge of its credit in the usual sense, the guarantee being of "each periodic payment" and the anticipated source of payment being from funds to be annually appropriated for quarters allowances for military personnel, at a monthly average of $90 per family housing unit.

We are also unable to adopt petitioner's concept of these obligations as instrumentalities of the Government, employed to perform the governmental functions of borrowing money and providing for the common defense (U. S. Const., art. I, § 8), such as to be beyond the taxing power of the State, irrespective of statute, under the doctrine of *McCulloch* v. *Maryland* (4 Wheat. [17 U. S.] 316). It seems self-evident that the comprehensive statutory plan, utilizing private corporations to obtain private capital to finance construction undertaken by a contractor for profit, necessarily negates petitioner's theory.

That the United States will, upon completion and acceptance of the project, become the owner of the capital stock of the mortgagors seems irrelevant to the status of the mortgages at the time of their recording or to that of the contractor who paid the tax. As the contractor asserts that the amount of the tax was not included in its bid figure nor in the contract price, the burden of the tax will not ultimately be borne by the United States, but that fact is not controlling in any event. (See *Alabama* v. *King & Boozer,* 314 U. S. 1.)

Two of the cases upon which petitioner strongly relies (*Federal Land Bank* v. *Crosland,* 261 U. S. 374, and *Pittman* v. *Home Owners' Corp.,* 308 U. S. 21) involved instrumentalities of the United States and hence, in our view, have no application here. Neither do we find support for appellant's position in *United States* v. *Allegheny County* (322 U. S. 174) which concerned '' an ad valorem general property tax on property owned by the United States '' (p. 185). (See, also, *Esso Std. Oil Co.* v. *Evans,* 345 U. S. 495, 499–500.)

The conclusions which we have reached with respect to the various grounds urged by petitioner seem somewhat fortified by recent decisions explicitly recognizing that '' the trend has been to reject immunizing these private parties from nondiscriminatory state taxes as a matter of constitutional law.'' (*United States* v. *City of Detroit,* 355 U. S. 466, 474.) As was further said in that case (p. 475) : '' To hold that the tax imposed here on a private business violates the Government's constitutional tax immunity would improperly impair the taxing power of the State.''

The order should be affirmed, with $10 costs.

Foster, P. J., Bergan, Herlihy and Reynolds, JJ., concur.

Order affirmed, with $10 costs.