In the Matter of **VARNEY WOOD PRODUCTS, INC., Bankrupt.**

No. 68–BK–497–R.

United States District Court,
W. D. Virginia,
Roanoke Division.

June 8, 1971.

Eggleston, Butler & Glenn, Roanoke, Va., for Girard Trust Bank.

Paul S. Barbery, Roanoke, Va., for Trustee J. Glenwood Strickler.

WIDENER, District Judge.

This matter comes before the court upon petition of Girard Trust Bank to review an order of the Referee in Bankruptcy entered January 30, 1970 denying petitioner's claim for certain proceeds held by the Trustee in Bankruptcy.

The relevant facts, substantially as set out by the Referee in his written opinion, are as follows:

By a loan agreement executed on March 7, 1966, Smith-Turner, (now Varney) Wood Products, Inc., granted to Girard Trust Bank, in order to secure Varney's indebtedness to Girard, a security interest under the Uniform Commercial Code in:

" * * *

    (a) All accounts owned by Borrower at the date of this agreement;

    (b) All accounts at any time hereafter acquired by Borrower;

    (c) Such contract rights as Borrower may from time to time specifically assign to Bank; and

    (d) All proceeds of such accounts and contract rights."

The agreement defined "account" as " * * * a right to payment for goods sold or leased or for services rendered, * * * includ(ing) a right to payment which has been earned under a contract right."

Girard duly recorded and filed a financing statement which listed only "Accounts Receivable" in the space provided for description of the types or items of property covered as collateral. It was noted on the statement that proceeds of collateral were also covered.

On April 26, 1968, two years after execution of the loan agreement, Varney executed a written contract with the West Virginia Economic Opportunity Agency (hereinafter EOA) agreeing to provide on-the-job training for twenty trainees selected from the ranks of the unemployed in West Virginia. Varney proceeded to carry out the program. The contract called for a weekly payment rate of $15 per trainee for a total of fifteen weeks, the length of the training program. Varney was thus to receive $4,500.00, payable upon completion of the program in August, 1968.

On September 4, 1968, Varney filed a petition under Chapter XI and was adjudicated a bankrupt under date of September 10, 1968. In a letter to Varney's counsel, dated September 9, 1968, Mr. William E. Van Norden, Vice President of Girard, wrote:

"As of September 5, when Mr. Smith advised me of Varney's filing under Chapter XI, the company was obligated to us in the principle (sic) amount of $116,000.00. * * * As you know, all accounts receivable of the company are assigned to us. * * *"

On October 2, 1968, the Referee entered an order providing, in part, as follows:

" * * * It is further ordered that all persons, firms, and corporations owing accounts to the debtor *because of goods purchased from the debtor* shall forthwith pay said accounts to the Girard Trust Bank. * * *" (Emphasis supplied).

The Bankruptcy Court assisted Girard in the collection of those accounts.

As a result of negotiations between the EOA and the Trustee, the latter was paid the sum of $3,120.00, representing the amount due Varney under the training program contract.[1] On October 29, 1969, while the case was in the process of being finally wound up, Girard filed a petition with the Referee claiming the above proceeds as due it under its security agreement with Varney. The referee denied the petition, ruling that the description of collateral appearing on Girard's financing statement ("Accounts Receivable") was inadequate to perfect a

---

1. The payment of $4,500.00 which the contract called for was not fully realized because some of the trainees did not remain under the program long enough to qualify under the terms of the contract.

security interest in the proceeds of the EOA contract. The present petition followed.

Petitioner urges that the term *account*, as defined in the loan agreement, is sufficiently descriptive of the disputed proceeds, and that *account receivable* should be given the same meaning as *account*. The referee reasoned instead that *accounts* has a broader meaning than that contemplated by *accounts receivable*, the latter encompassing only *open accounts*, as those are commonly understood in commercial context. He further found that all parties concerned with the assignment thought only in terms of *open accounts*, and that they never contemplated such transactions as that involved in the EOA job training project.

■ In order to perfect a security interest under the Uniform Commercial Code, as adopted in Virginia, a financing statement indicating the types or describing the items of collateral covered must be filed, except in certain cases not pertinent here. Va.Code Ann. §§ 8.9–302–402 (1950). The purpose of the required filing is to notify subsequent creditors of the claimed security interest. Since notice filing is a prerequisite to perfection, it necessarily follows that Girard acquired a security interest only in collateral described in the financing statement, regardless of how extensive may have been the interest granted by the security agreement. In re Levine, 6 U.C.C., Rep. 238 (Bkrptcy.Ct., D.Conn. 1969). For purposes of perfection under Title 8.9, a financing statement's description of collateral is sufficient if it "reasonably identifies" what it is purported to describe. § 8.9–110. Being of opinion that the term *accounts receivable* does not reasonably identify the proceeds of the EOA contract, this court finds no error in the Referee's denial of petitioner's claim.

The U.C.C. does not provide a definition of *account receivable*, classifying intangibles only in terms of *accounts, contract rights*, and *general intangibles*. §

8.9–106. Like petitioner's loan agreement, this section defines *account* broadly to include " * * * *any* right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper." (Emphasis supplied). *Account* is distinguished from *contract right* only in that the latter describes a right to payment under a contract " * * * not yet earned by performance." Thus, the term *account* also includes any right to payment which has been earned by performance under a contract right. § 8.9–106, official comment; see also § 8.9–306(1). The Code does not identify specific types of *accounts* or *contract rights*. By its broad definition of *accounts*, it offers a generic description of choses in action earned by performance (e. g., under a contract), which are not evidenced by an indispensable writing, and which may be the subject of commercial financing transactions.

■ The term *accounts receivable*, on the other hand, carries a familiar connotation in commercial usage. As ordinarily understood, " * * * accounts receivable are contract obligations owing to a person *on open account*." West Virginia Pulp and Paper Company v. Karnes, 137 Va. 714, 722, 120 S.E. 321 (1923). (Emphasis supplied). See also National Bank of Newport v. National Herkimer County Bank, 225 U.S. 178, 184, 32 S.Ct. 633, 56 L.Ed. 1042 (1912), and 1A Words and Phrases, "Accounts Receivable," for cases in accord with the Virginia definition. That is, they are running accounts which are usually disclosed in the creditor's account books, and which represent unsettled claims and transactions not reduced to writing. Smith v. Davis, 323 U.S. 111, 114, 65 S. Ct. 157, 89 L.Ed. 107 (1944); Costello v. Bank of America National Trust and Savings Association, 246 F.2d 807, 812 (9th Cir. 1957). In neither commercial nor legal context does the term *accounts receivable* embrace an isolated transaction wholly outside of an account creditor's normal business dealings, and reduced to an express written contract fix-

ing certain the terms of the transaction and the duties and liabilities of the parties thereto.

■ This distinction in the relative descriptive qualities of the terms *account* and *accounts receivable* may, at first blush, appear to be overly technical. It is true that the Uniform Commercial Code does not require a description of collateral to be specific and that it accordingly rejects the older chattel mortgage cases holding descriptions of property insufficient unless exact and detailed. See § 8.9–110, and official comment thereto. The test of "reasonable identification" is consistent with and must be read in light of the Code's underlying purposes and policies, which are, in part, " * * * to simplify, clarify, and modernize the law governing commercial transactions." § 8.1–102(2) (a). To those ends, however, the Code's framers have provided a simplified terminology for identifying intangibles; to wit: *accounts, contract rights,* and *general intangibles.* Petitioner thus need only have inserted in his financing statement's description of collateral the word *account,* in order to reasonably identify the proceeds of the EOA contract. Alternatively, he need only have filed a copy of his security agreement, § 8.9–402(1), which agreement contains the terms *accounts* and *contract rights,* and defines them as they are defined in the Code. Instead, petitioner listed the collateral in the financing statement as *accounts receivable,* a term which, used in its customary sense, describes only the ordinary commercial open account. To hold the familiar *accounts receivable* to be descriptive of the broad range of obligations covered by the term *account,* as defined in the Code, would be to inject uncertainty into the secured transactions setting, where parties necessarily rely upon documents meaning what they say. See Safe Deposit Bank and Trust Company v. Berman, 393 F.2d 401 (1st Cir. 1968). Injecting such uncertainty is not only needless but unwise where the Code has, as in this instance, afforded a secured party in a transaction involving intangible security, a clear and simple method for identifying the collateral. The petitioner simply ignored the plain opportunity afforded to it by the statute.

■ To summarize. The court is of opinion that the description "accounts receivable," as used by Girard in its financing statement, is not such reasonable notice as would put a subsequent lender upon inquiry into whether a security interest in payments due under the EOA contract was already claimed. While the broader term *accounts,* as defined in the Code, necessarily includes *accounts receivable,* the more narrow term *accounts receivable,* as defined in Virginia, is not inclusive of the term *accounts,* as broadly defined in the Code.[2]

It is obvious that the parties to the present loan agreement contemplated an assignment only of open trade accounts due Varney, and that petitioner's claim to the disputed proceeds was an afterthought. The Referee's finding to that effect may not be disturbed unless clearly erroneous. Bankruptcy Gen.Order 47. His conclusion that the description of collateral appearing on petitioner's financing statement was inadequate to perfect a security interest in the proceeds of the EOA contract is, in the opinion of the court, based upon a correct construction of the applicable law and supported by substantial evidence in the record.

An order is this day entered remanding the case to the Referee for proceedings consistent with this opinion.

2. There is no Virginia Comment to Section 8.9–106 defining *account.* In the Official Comment thereto, *account,* inter alia, is equated to the ordinary commercial *account receivable.* The Official Comment was prepared, obviously, without reference to the definition of *account receivable* in Virginia and elsewhere, as set out in West Virginia Pulp and Paper Company v. Karnes, supra, and in other authorities cited in this opinion.