

# Office of the Attorney General
## State of Texas

DAN MORALES
. ATTORNEY GENERAL

December 10, 1993

Honorable O.H. "Ike" Harris
Chair
Committee on State Affairs
Texas State Senate
P.O. Box 12068
Austin, Texas 78711

Opinion No. DM-274

Re: Whether, in accordance with section 2 of the Public Funds Investment Act, V.T.C.S. article 842a-2, a public funds investment pool may "purchase, sell, or invest its funds or funds under its control" in covered call contracts or covered put contracts (RQ-605)

Dear Senator Harris:

You have asked us to consider whether, under section 2 of the Public Funds Investment Act (the "act"), V.T.C.S. article 842a-2, a public funds investment pool may purchase and sell United States government securities through the writing of covered call contracts or covered put contracts.[1] We determine that it may not.

Section 791.011(a) of the Government Code authorizes a local government to contract with another local government to perform certain governmental functions and services. For purposes of the Interlocal Cooperation Act, see Gov't Code § 791.002, "governmental functions and services" includes public funds investment. *Id.* § 791.003(3)(L). The act limits the investment authority of several political subdivisions, including a public funds investment pool[2] created under chapter 791 of the Government Code. *See also* Tex. Const. art. III, § 52(e) (providing that county, city, town, or other political corporation or subdivision may invest its funds as authorized by law).

Section 2(a) of the act provides in pertinent part that

> any . . . public funds investment pool created under Chapter 791, Government Code, acting on behalf of [an incorporated city or town, a county, a public school district, a district or authority created under Article III, Section 52(b)(1) or (2) or Article XVI, Section 59 of the

---

[1]For a description of covered call contracts and covered put contracts, *see infra* p. 5.

[2]Section 2(c)(4) of the act defines "public funds investment pool" as "an entity created to invest public funds jointly on behalf of the entities that participate in the pool and whose investment objectives in order of priority are: first, safety of principal; second, liquidity; and third, income." Acts 1993, 73d Leg., ch. 946, § 1.

Texas Constitution, an institution of higher education as defined by Section 61.003 of the Education Code, a hospital district, or a fresh water supply district] may, in accordance with this Act, purchase, sell, and invest its funds and funds under its control in . . . :

(1) obligations of the United States or its agencies and instrumentalities;

. . . .

(3) other obligations, the principal of and interest on which are unconditionally guaranteed or insured by, or backed by the full faith and credit of, . . . the United States or its agencies and instrumentalities;

. . . .

(9) fully collateralized repurchase agreements having a defined termination date, secured by obligations described by Subdivision (1) of this subsection, pledged to the political entity and deposited with a third party selected and approved by the political entity, and placed through a primary government securities dealer, as defined by the Federal Reserve, or a bank domiciled in this state.

Acts 1993, 73d Leg., ch. 946, § 1, at 4055-56; *see also id.* at 4057 (adding § 2(e)) (authorizing any entity listed in subsection (a) to invest its funds and funds under its control in eligible public funds investment pool if entity's governing body resolves to authorize investment in particular pool). You ask us to determine whether a public funds investment pool may purchase, sell, or invest its funds in covered call contracts and covered put contracts. The act specifically lists the types of investments that a public funds investment pool is authorized to make. The enumerated list does not expressly include covered call contracts and covered put contracts. *See generally* Attorney General Opinions JM-1210 (1990); MW-506 (1982); M-607 (1970). We must determine, therefore, whether any of the explicitly listed permissible investments includes covered call contracts and covered put contracts. In our opinion, the listed permissible investments do not include covered call contracts and covered put contracts.

We believe that the only permissible investments listed in section 2(a) of the act that might include covered call contracts and covered put contracts are those described in subsection (a)(1), (3), and (9). *See supra* pp.1-2 (quoting V.T.C.S. art. 842a-2, § 2(a)(1), (3), (9)). We will consider first whether section 2(a)(1) includes covered call contracts and covered put contracts, *i.e.*, whether a covered call contract or a covered put contract is an "obligation[] of the United States or its agencies and instrumentalities." Attorney General Opinion JM-1201 (1990) is relevant to our inquiry.

In Attorney General Opinion JM-1201 this office considered whether the Veterans' Land Board was authorized to enter into a call option contract. That opinion noted that article III, sections 49-b and 49-b-1 of the Texas Constitution authorize the Veterans' Land Board to invest "in bonds or obligations of the United States." Attorney General Opinion JM-1201 at 2. Thus, the question this office faced was whether a call option contract is a bond or obligation of the United States. *Id.* After examining the history of article III, sections 49-b and 49-b-1 of the Texas Constitution, the opinion determined that the phrase "bonds or obligations of the United States" denotes credit instrumentalities of the federal government. *Id.* at 5. According to the opinion, such credit instrumentalities are characterized by (1) written documents, (2) the bearing of interest, (3) a binding promise by the United States to pay specified sums at specified dates, and (4) specific congressional authorization that pledges the faith and credit of the United States in support of the promise to pay. *Id.* (citing *Smith v. Davis*, 323 U.S. 111, 114-15 (1944)).

The opinion described a "call option" contract as

> a promise to sell a security in the future at a price fixed today. The seller agrees to deliver the security for a set price (the "strike price") during a limited time. As described by the United States Court of Appeals for the Seventh Circuit:
>
>> The buyer pays a sum (the "premium") for the [call option]. The strike price exceeds the current market price of the security. Sellers are betting that the price will not exceed the strike price during the duration of the option; buyers are betting that it will.
>
> *Board of Trade of City of Chicago v. Securities & Exchange Comm'n*, 883 F.2d 525, 527 (7th Cir. 1989).

*Id.* at 6-7. This office concluded that a call option contract does not satisfy the four characteristics of credit instrumentalities of the United States because such a contract represents an instrumentality of a third party, not of the United States. *Id.* at 5. "[T]he consideration to flow to the [Veterans' Land Board] from [a call option contract] is merely a promise from a third party regarding the manner in which the third party will *deal* with credit instrumentalities of the United States. Such third party obligations do not become obligations of the United States merely because the *assets* which are subject of speculative transactions with the third party are obligations of the United States." *Id.* at 6. Accordingly, the opinion concluded that an investment in a call option contract is not an investment in an obligation of the United States, and the Veterans' Land Board therefore is unauthorized to enter into such transactions.[3] *Id.*

---

[3]Your question appears to assume that the writing of covered call contracts and covered put contracts is simply a means by which a public funds investment pool may purchase or sell United States government obligations. Attorney General Opinion JM-1201 refutes that assumption.

We found no legislative history indicating that the legislature intended to include covered call contracts and covered put contracts within the ambit of section 2(a)(1) of the act, "obligations of the United States or its agencies." Additionally, based on the similarity between a call option contract, as described in Attorney General Opinion JM-1201, and your description of a covered call contract and a covered put contract, we believe that neither a covered call contract nor a covered put contract is an obligation of the United States or its agencies and instrumentalities. Similarly, section 2(a)(3), which authorizes investments in obligations that the United States or its agencies and instrumentalities unconditionally guarantee, insure, or back with the full faith and credit of the United States, does not encompass covered call contracts and covered put contracts. As this office determined in Attorney General Opinion JM-1201, a call option contract "is merely a promise from a third party regarding the manner in which the third party will deal with credit instrumentalities of the United States." Attorney General Opinion JM-1201 at 6. The United States or its agencies and instrumentalities do not guarantee, insure, or back the promise of the third party.

Finally, we must consider whether covered call contracts and covered put contracts are repurchase agreements within the scope of section 2(a)(9) of the act. In the context of the act, a "repurchase agreement" is

> a simultaneous agreement to buy, hold for a specified time, and then sell back at a future date, obligations [of the United States or its agencies and instrumentalities], the principal and interest of which are guaranteed by the United States or any of its agencies, in market value of not less than the principal amount of the funds disbursed. The term includes direct security repurchase agreements and reverse security repurchase agreements.

V.T.C.S. art. 842a-2, § 2(c)(3).

You explain that a direct security repurchase agreement is a contract between a seller and a buyer, in which the seller agrees to sell obligations of the United States or its agencies and instrumentalities, then to buy them back at an agreed upon price and a specified date. On the other hand, a reverse security repurchase agreement is a contract between a dealer in government securities and an investor, in which the dealer agrees to purchase from the investor United States government securities and the investor agrees to repurchase the securities at a later date. This office previously has described a repurchase agreement as "essentially a short-term collateralized loan." Attorney General Opinion JM-23 (1983) at 1.

The act thus authorizes a public funds investment pool to purchase, sell, or invest its funds and funds under its control in United States government securities. You indicate that settlement on the outright purchase or sale of United States government securities

occurs within one to five business days.[4]  In addition, as you note, the act expressly authorizes a public funds investment pool to purchase, sell, and invest its funds and funds under its control in repurchase agreements that meet certain standards. You point out that, in contrast to an "outright" purchase or sale of securities, under a repurchase agreement (both a direct security repurchase agreement and a reverse security repurchase agreement), the United States securities are delivered to the buyer at a date beyond the usual settlement time, which, as stated above, generally is five business days.

You state that such "forward delivery" also is a characteristic of covered call contracts and covered put contracts. You explain such contracts as follows:

> An investor who writes a covered call receives an income premium, a sum of money, and agrees to sell a [United States] Government security, already owned by the investor, at a future date and at an agreed price. The call writer is considered covered when the investor already owns the underlying [United States] Government security agreed to be sold under the covered call contract.

> On the other hand, an investor who writes a covered put receives an income premium, a sum of money, agrees to buy a [United States] Government security at a future date and at an agreed price. The put writer is considered covered when the investor has a sufficient cash reserve equal to the total purchase price agreed to under the covered put contract.

Thus, under a covered call contract, an investor agrees to sell certain specified United States government securities in the future; under a covered put contract, an investor agrees to buy certain specified United States government securities in the future. Neither transaction includes a subsequent buy-back of the securities. In contrast, under either a direct security repurchase agreement or a reverse security repurchase agreement, one party to the transaction agrees to sell United States government securities now and to buy the securities back at a later specified date.

The legislature enacted the Public Funds Investment Act in 1987 to enable certain political subdivisions to make investments that previously had been prohibited. *See* Acts 1987, 70th Leg., ch. 889, at 2985; *see also* Tex. Const. art. III, § 52(e); Attorney General Opinion DM-202 (1993) at 3. Since its original enactment, the act has authorized political subdivisions to which the act applies to invest in "fully collateralized direct repurchase

---

[4]When a securities transaction is "settled," the delivery of certificates from seller to buyer actually is effected and the buyer has paid for the securities. *See* H. McCAWLEY, TRANSACTIONS IN STOCK, SECURITIES AND Other FINANCIAL INSTRUMENTS A-4 (1990). The "settlement date" generally is on the fifth business day after the buyer and seller have entered into a binding contract to buy and sell the stock. *Id.*

agreements."[5]   Acts 1987, 70th Leg., ch. 889, § 2(a)(6), at 2985, *amended and renumbered by* Acts 1993, 73d Leg., ch. 946, § 1.  In public hearings on the 1987 bill, Representative Hammond, the author of the bill, stated that the bill "sets out certain specific areas that [the listed political subdivisions] are allowed to invest in."  Hearings on H.B. 1488 Before the House Comm. on Financial Institutions, 70th Leg. (Apr. 1, 1987) (statement of Representative Hammond, author) (tape available from House Committee Services Office).  During the hearings on the bill before the House Committee on Financial Institutions, legislators expressed concern that the investments listed in the bill be safe and prudent.  *See id.* (statements of Representative Hammond and repeated questions from Representative Larry).

In our opinion, the legislature intended the list of permissible investments in section 2(a) of the act to be specifically delineated and exclusive.  Additionally, the legislature specifically has considered and approved the riskiness of each of the listed permissible investments.  We therefore decline to construe "repurchase agreements" in section 2 of the act to include covered call contracts and covered put contracts.  Consequently, we conclude that section 2(a)(9) of the act does not include covered call contracts and covered put contracts.  Because covered call contracts and covered put contracts do not fall within any of the investments in section 2(a) of the act that a public funds investment pool is permitted to purchase, sell, or invest in, a public funds investment pool may not write such contracts.

---

[5]In 1989 the legislature amended the language of what is now section 2(a)(9) to delete the word "direct" from the phrase "fully collateralized direct repurchase agreements."  *See* Acts 1989, 71st Leg., ch. 628, § 1, at 2099, 2100.  Unfortunately, the legislature enacted three other bills in 1989 that amended section 2(a), none of which deleted the word "direct" from "fully collateralized direct repurchase agreements" in what is now subsection (9).  *See* Acts 1989, 71st Leg., ch. 39, § 1, at 325, 326; *id.* ch. 693, § 4, at 3199, 3200; *id.* ch. 750, § 1, at 3333, 3333.  In 1993 the legislature clearly amended section 2(a)(9) to delete the word "direct."  *See* Acts 1993, 73d Leg., ch. 946, § 1.

# S U M M A R Y

A covered call contract and a covered put contract are not, for purposes of section 2 of the Public Funds Investment Act, V.T.C.S. article 842a-1, "obligations of the United States or its agencies and instrumentalities," "obligations, the principal of and interest on which are unconditionally guaranteed . . . by . . . the United States or its agencies and instrumentalities," or "fully collateralized repurchase agreements having a defined termination date." Thus, section 2 does not authorize a public funds investment pool to "purchase, sell, or invest its funds and funds under its control" in covered call contracts or covered put contracts.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Attorney General for Litigation

RENEA HICKS
State Solicitor

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General