(No. 61116.—

ROCKFORD LIFE INSURANCE COMPANY, Appellant, v. THE DEPARTMENT OF REVENUE *et al.*, Appellees.

*Opinion filed April 4, 1986.—Rehearing denied June 2, 1986.*

Williams & McCarthy, of Rockford (John C. McCarthy and Russell D. Anderson, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for appellee Department of Revenue *et al.*

Daniel D. Doyle, State's Attorney, of Rockford (Charles J. Prorok, Assistant State's Attorney, of counsel), for appellee Winnebago County Treasurer.

JUSTICE MILLER delivered the opinion of the court:

The Illinois Department of Local Government Affairs

assessed the capital stock of the Rockford Life Insurance Company for the year 1978 at $6,937,000. Included in the Department's computation were certain obligations that had not been included in the assessment in previous years and that Rockford Life believed were exempt from State and local taxation. The company sought administrative review of the assessment. The circuit court of Winnebago County affirmed the assessment and, in a related proceeding brought by the Winnebago County treasurer, entered judgment against Rockford Life in the amount of $723,053.70, representing the amount of personal property tax due and interest on that sum. The appellate court affirmed both judgments in a consolidated appeal. (128 Ill. App. 3d 302.) We allowed Rockford Life's petition for leave to appeal (94 Ill. 2d R. 315(a)) and now affirm the judgment of the appellate court.

Rockford Life presents two arguments against the assessment made here. The company argues first that the securities in question were obligations of the Federal government and therefore, under Federal law, were immune from State and local taxation. Alternatively, the company contends that the Department is estopped from making the 1978 assessment because in preceding years these or similar obligations were not included in the calculation of its capital stock; the company says that in planning its investments it relied on the Department's earlier practice.

I

The assessment of Rockford Life's capital stock was to be used by the county clerks in determining the amount of personal property tax payable by the company. *Ad valorem* property taxes were to be abolished on or before January 1, 1979 (Ill. Const. 1970, art. IX, sec. 5(c)), and the assessment for 1978 was to be the last for that purpose. The three general categories of securities

in question here are mortgage-backed certificates guaranteed by the Government National Mortgage Association (see 12 U.S.C. sec. 1721(g) (1976)) (GNMA), obligations guaranteed under the New Communities Act of 1968 (see 42 U.S.C. sec. 3902 (1976)) or under the Urban Growth and New Community Development Act of 1970 (see 42 U.S.C. sec. 4514 (1976)), and ship financing bonds guaranteed under the Merchant Marine Act of 1936 (see 46 U.S.C. sec. 1273(a) (1976)).

The greatest part of Rockford Life's holdings in question here consisted of GNMA mortgage-backed securities. GNMA is a wholly owned government corporation, created in 1968 "to attract private capital into housing." (*New York Guardian Mortgagee Corp. v. Cleland* (S.D.N.Y. 1979), 473 F. Supp. 409, 411.) Describing the operation of the mortgage-backed securities program, the court there explained, "In connection with this program, GNMA was authorized to issue securities 'based on and backed by' a pool of mortgages guaranteed by one of several government agencies, *** and to authorize qualifying private parties to issue such securities. *Id.* GNMA was further authorized to guarantee with the full faith and credit of the United States the timely payment of principal and interest falling due on such securities. *Id.*" (473 F. Supp. 409, 411.) The court noted, "The general purpose of these provisions was to foster a secondary market for home mortgages by providing a safety and liquidity not available to those investing directly in mortgages and to insulate GNMA investors from problems inherent in the management of mortgage portfolios. [Citations.]" 473 F. Supp. 409, 411.

As the appellate court described them, the other obligations in question here reflect a similar intent to attract private money into the credit markets by providing for government guarantees of the obligations. (128 Ill. App. 3d 302, 308-09.) The appellate court found that these se-

curities "all have certain characteristics in common: they are issued by private parties, guaranteed by the full faith and credit of the United States government, and the United States government receives the fee for the guarantees." (128 Ill. App. 3d 302, 309.) The appellate court held that the securities involved here were not immune from State or local taxation. This same result was reached in an earlier case, *Montgomery Ward Life Insurance Co. v. Department of Local Government Affairs* (1980), 89 Ill. App. 3d 292, which also involved the inclusion of mortgage-backed GNMA securities in the assessment of an insurance company's capital stock.

The parties agree that the relevant Federal statutory provision regarding the immunity of Federal obligations from State and local taxation is the following:

> "[A]ll stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority. This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax, except nondiscriminatory franchise or other nonproperty taxes in lieu thereof imposed on corporations and except estate taxes or inheritance taxes." (Pub. L. No. 86—346, 73 Stat. 622; see 31 U.S.C. sec. 742 (1976).)

In 1982, when title 31 of the United States Code was reformulated, the provision in question, generally referred to as section 3701, was replaced by section 3124(a) of title 31 without substantive change (31 U.S.C. sec. 3124(a) (1982)). See *American Bank & Trust Co. v. Dallas County* (1983), 463 U.S. 855, 859 n.1, 77 L. Ed. 2d 1072, 1076 n.1, 103 S. Ct. 3369, 3372 n.1.

The Supreme Court has described section 3701 " 'as principally a restatement of the constitutional rule' " of the immunity of Federal obligations from taxation by

States and their political subdivisions. (*First National Bank v. Bartow County Board of Tax Assessors* (1985), 470 U.S. 583, 593, 84 L. Ed. 2d 535, 543, 105 S. Ct. 1516, 1522, quoting *Memphis Bank & Trust Co. v. Garner* (1983), 459 U.S. 392, 397, 74 L. Ed. 2d 562, 567, 103 S. Ct. 692, 695.) The court explained the constitutional basis for the rule in *Society for Savings v. Bowers* (1955), 349 U.S. 143, 144, 99 L. Ed. 950, 955, 75 S. Ct. 607, 608:

> "In 1829 this Court decided in *Weston v. City Council of Charleston* [(1829), 27 U.S. (2 Pet.) 449, 7 L. Ed. 481], that obligations of the Federal Government are immune from state taxation. This rule, aimed at protecting the borrowing power of the United States from state encroachment, was derived from the 'Borrowing' and 'Supremacy' Clauses of the Constitution, and the constitutional doctrines announced in *McCulloch v. Maryland* [(1819), 17 U.S. (4 Wheat.) 316, 4 L. Ed. 579]."

The required immunity has been recognized in the decisions of this court. See *Federal Life Insurance Co. v. Department of Local Government Affairs* (1976), 65 Ill. 2d 320, 324; *Price Flavoring Extract Co. v. Lindheimer* (1938), 368 Ill. 450, 452; see also Ill. Rev. Stat. 1979, ch. 120, par. 500.4 (exempting from taxation "[p]roperty of the United States, except such property as the United States has permitted or may permit to be taxed").

In *Smith v. Davis* (1944), 323 U.S. 111, 89 L. Ed. 107, 65 S. Ct. 157, the court considered whether an open account, or account receivable, owed to a contractor by the Federal government could be included in the computation of State and local personal property taxes. In determining whether the open account was constitutionally immune from taxation, the court first considered the nature of the claim and then described the characteristics of instrumentalities generally qualifying for exemption. The court said:

"Such a unilateral, unliquidated creditor's claim, which by itself does not bind the United States and which in no way increases or affects the public debt, cannot be said to be a credit instrumentality of the United States for purposes of tax immunity.

In these respects a mere open account claim differs vitally from the type of credit instrumentalities which this Court in the past has recognized as constitutionally exempt from state and local taxation. Such instrumentalities in each instance have been characterized by (1) written documents, (2) the bearing of interest, (3) a binding promise by the United States to pay specified sums at specified dates and (4) specific Congressional authorization, which also pledged the faith and credit of the United States in support of the promise to pay." 323 U.S. 111, 114-15, 89 L. Ed. 107, 110-11, 65 S. Ct. 157, 159.

In *Smith* the court also considered, as an inquiry separate from the constitutional question, whether the open account was exempt from taxation under section 3701; at that time the section provided only that "all stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority." In rejecting the taxpayer's argument that the claim was statutorily exempt, the court in *Smith* said:

"Section 3701 on its face applies only to written interest-bearing obligations issued pursuant to Congressional authorization. Stocks, bonds and Treasury notes are obviously of that nature. And, under the rule of *ejusdem generis*, it is reasonable to construe the general words 'other obligations,' which allegedly cover open accounts, as referring only to obligations or securities of the same type as those specifically enumerated. [Citations.] This interpretation is in accord with the long established Congressional intent to prevent taxes which diminish in the slightest degree the market value or the investment attractiveness of obligations issued by the United States in an effort to secure necessary credit. It is unnecessary to extend such tax exemption, at least through statutory in-

terpretation, to non-interest-bearing claims or obligations which the United States does not use or need for credit purposes. Tax exemptions being the exception rather than the rule, much clearer language evidencing an intent to immunize open account claims under section 3701 is necessary under these circumstances." 323 U.S. 111, 116-17, 89 L. Ed. 107, 111-12, 65 S. Ct. 157, 160.

Although *Smith* considered the constitutional and statutory inquiries separately, the statute, as we have said, has been construed by the court as a restatement of the constitutional rule. Therefore, we believe that the separate standards described by the court are, for our purposes here, overlapping and equally valid. Under the four-part constitutional test set out in *Smith*, the appellate court here concluded that the securities in question were not exempt from State or local taxation. The appellate court believed that the securities did not satisfy the third criterion, a promise to pay specified sums at specified times. The Federal government's undertaking with respect to these various obligations is a guarantee of the payment of principal and interest. The obligation imposed by that is not certain; it may or may not arise, depending on whether a default occurs. Moreover, the securities in question here do not appear to be related to the government's credit needs. The government is not itself the borrower, and it has made the guarantees to induce others to invest in the securities. We do not believe that the securities represent "other obligations of the United States" within the meaning of section 3701.

Moreover, Congress has the authority to provide for the exemption of these obligations but has not done so. Rather, it has provided only for the exemption of the association itself:

"The Association [*i.e.*, GNMA], including its franchise, capital, reserves, surplus, mortgages or other security holdings, and income, shall be exempt from all taxation

now or hereafter imposed by the United States, by any territory, dependency, or possession thereof, or by any State, county, municipality, or local taxing authority, except that any real property of the Association shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed." 12 U.S.C. sec. 1723a(c)(1) (1976).

In contending for immunity of the types of obligations at issue here, Rockford Life would find support in the decision of the Supreme Court in *Memphis Bank & Trust Co. v. Garner* (1983), 459 U.S. 392, 74 L. Ed. 2d 562, 103 S. Ct. 692. In that case the court held that a tax imposed by the State of Tennessee on banks was discriminatory within the meaning of section 3701; in the computation of the tax base the taxing statute included income earned from Federal obligations but excluded income earned from obligations of that State or its political subdivisions. (459 U.S. 392, 398-99, 74 L. Ed. 2d 562, 568, 103 S. Ct. 692, 696.) Reaching that conclusion, the court said that it did not need to consider whether the tax was in fact "a 'franchise or other nonproperty ta[x] in lieu thereof.' " 459 U.S. 392, 396 n.6, 74 L. Ed. 2d 562, 567 n.6, 103 S. Ct. 692, 695 n.6.

Rockford Life interprets the Supreme Court's decision in *Memphis Bank* as holding that the particular obligations involved in that case were in fact immune from State and local taxation. The company believes that the obligations at issue here are sufficiently similar to those in *Memphis Bank* that they too must be deemed exempt.

In *Memphis Bank* "[t]he parties stipulated that the amount of tax paid by appellant for the years 1977 and 1978 was based entirely on interest earned on various federal obligations, primarily notes and bills of the United States Treasury and obligations of Federal Credit Banks." (459 U.S. 392, 394-95, 74 L. Ed. 2d 562, 566,

103 S. Ct. 692, 694.) Elaborating on that information, the court explained in a footnote that the tax there "was also based in part on income from obligations of the Farmers Home Administration and the Federal National Mortgage Association." (459 U.S. 392, 395 n.4, 74 L. Ed. 2d 562, 566 n.4, 103 S. Ct. 692, 694 n.4.) The court recognized that Congress had expressly exempted obligations of the Farm Credit Banks from State and local taxation (see 12 U.S.C. secs. 2055, 2079, 2134 (1976)), observing that, "for purposes of federal tax immunity, our cases have made no distinction between the obligations of the United States Treasury and the obligations of the Federal Credit Banks. [Citations.]" 459 U.S. 392, 396 n.5, 74 L. Ed. 2d 562, 567 n.5, 103 S. Ct. 692, 695 n.5.

Rockford Life believes that its securities were materially similar to the Farm Credit Bank, Farmers Home Administration, and Federal National Mortgage Association obligations held by the taxpayer in *Memphis Bank,* and the company would conclude that its securities were similarly exempt. We disagree with Rockford Life's broad interpretation of *Memphis Bank,* and we do not believe that that case is controlling here. Although it is true that the exception stated in the second sentence of section 3701, allowing "nondiscriminatory franchise or other nonproperty taxes in lieu thereof," would not need to come into play unless it were first resolved that the obligations in question were in fact "stocks, bonds, Treasury notes and other obligations of the United States," in *Memphis Bank* the initial inquiry into the nature of the obligations was satisfied by the parties' stipulation that the tax did indeed fall entirely on income from exempt obligations. The only remaining questions, then, were whether the tax was being imposed in a discriminatory manner and whether it was a "franchise or other nonproperty ta[x] in lieu thereof." As we have said, the court decided that the tax was being imposed discrimina-

torily, and therefore the type of the tax did not need to be determined. In *Memphis Bank* it was the parties' stipulation that made section 3701 applicable in the first instance, and we do not construe the case as holding that any particular type of security was tax exempt. As the court indicated, the bulk of the income there came from Treasury notes and bills and from Farm Credit Bank obligations. Because we have determined that *Memphis Bank* does not control here, we need not address Rockford Life's additional argument comparing its obligations to those held by the taxpayer in *Memphis Bank*.

As further support for its argument that the obligations at issue here are exempt from State and local taxation, Rockford Life points to certain official statements made regarding the natures of the Federal guarantees. For example, with respect to the GNMAs, the company cites an Attorney General opinion of May 15, 1970, by then Assistant Attorney General William H. Rehnquist, who wrote, "I conclude that the Association [*i.e.*, GNMA] is authorized to make the proposed guaranties and that those guaranties would constitute general obligations of the United States backed by its full faith and credit." Rockford Life cites similar evidence regarding the other obligations involved here. We do not interpret these statements as touching on the issue presented. Rather, the concerns expressed were centered on the question whether the particular obligations posed any credit risk. With a government guarantee of the payment of principal and interest, the credit risk of the securities was reduced considerably, which enhanced their attractiveness to the investment community.

For these reasons, then, we conclude that the securities in question here were not "other obligations of the United States" within the meaning of section 3701 and therefore were not exempt from State or local taxation.

The Department correctly included them in its assessment of the company's capital stock.

## II

Rockford Life makes the alternative argument that the Department is equitably estopped from including within the computation of the company's capital stock the obligations in question here. Rockford Life points to the Department's exemption of the same or similar securities in previous years, and the company argues that in building a portfolio of investments it justifiably relied on that past practice and accordingly invested in obligations that it believed would be deemed immune from State and local taxation. The appellate court rejected the estoppel argument, concluding that the company's reliance on the previous practice was not reasonable and that no fraud or injustice had occurred.

At the administrative hearing Rockford Life presented its capital stock returns for the four previous years. During that period the company held obligations identical or materially similar to the ones at issue here, and in each of those years the Department either made no assessment or, after final review, cancelled the assessment. Rockford Life contends that in structuring its investment portfolio it relied on the earlier determinations of tax immunity, and the company's intangible property tax returns for the four years preceding 1978 show that as the company's capital stock increased, it invested increasing amounts in these obligations.

The usual elements of estoppel—a party's reasonable and detrimental reliance on the words or conduct of another (*Dill v. Widman* (1952), 413 Ill. 448, 455-56)—must be supplemented here with the additional restriction that a public body will be estopped only when that is necessary to prevent fraud or injustice (*Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 448-49), and that is

especially true when public revenues are involved (*People ex rel. Scott v. Chicago Thoroughbred Enterprises, Inc.* (1973), 56 Ill. 2d 210, 220; *Austin Liquor Mart, Inc. v. Department of Revenue* (1972), 51 Ill. 2d 1, 4-5). This court previously had held that the State is not estopped from reexamining a taxpayer's liability even though the return for that period has been approved (*People ex rel. Scott v. Chicago Thoroughbred Enterprises, Inc.* (1973), 56 Ill. 2d 210; *Austin Liquor Mart, Inc. v. Department of Revenue* (1972), 51 Ill. 2d 1), and the Department's change in policy here would not necessarily be more burdensome or unjust than a reexamination of a taxpayer's returns. We do not believe that the circumstances here show that the company has suffered fraud or injustice.

Moreover, it is not clear that Rockford Life actually suffered any harm from the Department's change in policy. The detriment to Rockford Life in this case would be measured not simply by the amount of the company's ultimate tax liability but would depend also on the relative returns provided by the various investment alternatives. This became clear at the administrative hearing, during the testimony of the company's investment manager. In explaining the company's reliance on the Department's previous practice, Mr. Ray testified:

"Now, had we known that there was going to be a change in the attitude toward GNMA's from prior years when there was—

Q. When they were not taxed?

A. When they were not taxed, then probably we would have had to buy U.S. Treasury, direct U.S. Treasury obligations.

Q. Or some other investment?

A. Or some other investment. But in so doing, if we had bought U.S. Treasury obligations, that would have brought less income to the company because the income from the U.S. Treasury is less than on a GNMA."

Thus, it is not clear that the company actually suffered

any harm from investing in the higher yielding, taxable obligations rather than in the lower yielding, tax-immune Treasury obligations.

Therefore, we conclude that the obligations in question here were not exempt from State or local taxation, and that the Department was not estopped from including them here in Rockford Life's capital stock. For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*