CHARLES MARX, Plaintiff-Appellee, v. THE STATE OF ILLINOIS, Department of Revenue, Defendant-Appellant.

Fourth District   No. 4—87—0544

Opinion filed January 28, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Jill A. Deutsch, Assistant Attorney General, both of Chicago, of counsel), for appellant.

Andrew C. Schnack III, of Quincy, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On September 18, 1984, plaintiff Charles Marx pleaded guilty in the circuit court of Adams County to criminal charges consisting of eight counts of wilful failure to file retailers' occupation tax returns. He was subsequently sentenced to 'one year conditional discharge and ordered to pay restitution in the sum of $3,354.94 for taxes due for the time periods at issue in the various counts of the indictment. The defendant the Illinois Department of Revenue (Department) later notified plaintiff that there remained a balance due for civil interest and penalties for periods prior to the entry of his guilty plea. On July 3, 1986, plaintiff filed this action in the circuit court of Adams County for a declaratory judgment to estop the Department from collecting the interest and penalties due. The court denied the Department's request for summary judgment and attorney fees.

Following a bench trial, the court entered a declaratory judgment on July 10, 1987, estopping the Department from collecting additional sums of tax, penalty, and interest from plaintiff in excess of the amount of $3,354.94 for which he was required to make restitution in the criminal proceeding. The Department appeals, contending: (1) the evidence was insufficient to satisfy the requirement of extraordinary circumstances to invoke estoppel against the State; and (2) it was entitled to attorney fees pursuant to section 2—611 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—611), because plaintiff's suit was frivolous. We reverse the judgment estopping the Department from proceeding to collect penalties and interest from plaintiff, but affirm the court's denial of attorney fees.

At trial, the court heard testimony from plaintiff, his former attorney, Jerry Brennan, and Matthew Schneider, the assistant Attorney General who represented the Department in negotiations with the plaintiff. Plaintiff testified (1) he was aware the indictment alleged he had failed to pay $3,354.94 in tax plus $2,378.52 in interest; (2) pursuant to the plea agreement, he (a) waived his right to a jury trial, (b) pleaded guilty to misdemeanor charges of wilful failure to file retailers' occupation tax returns, and (c) was required to complete a term of probation and pay a fine in addition to repaying the principal amount due; and (3) he did not understand from the agreement that the Department was still "going to require [him] to pay an interest amount on [the] original bill." On cross-examination, plaintiff admitted his understanding that "interest was not involved" was not as a result of any conversation he had with the prosecuting attorney, and that he pleaded guilty because he was guilty of not filing on time, not because he was told he would not have to pay interest.

Brennan testified that he and the Department's attorney negotiated an agreement whereby the Department would dismiss the felony charges against plaintiff, and plaintiff would pay a fine plus restitution. He said it was his impression that they were trying to come up with a "package" agreeable to all parties, and he did not remember any discussion on the question of interest. He further testified he understood the plea was the "total embodiment of the agreement," and he had no knowledge that any additional monies were going to be requested by the Department. He admitted, however, that the Department's attorney did not specifically waive the interest and penalties and that the question of plaintiff's civil liability was not discussed.

On examination by the court, Brennan testified he did not remember the amount initially requested by the Department in the order of restitution, but he said the Department "probably" started with a fig-

ure including principal and interest and he started with one substantially lower than that. He said his "best recollection" was that the Department wanted the total amount, but after negotiations, they finally agreed to the principal balance amount. He repeated the statement that there was no discussion as to further civil action, one way or the other.

Matthew Schneider testified (1) he handled a number of other retailers' occupation tax cases, most of which were negotiated; (2) he had been reluctant to reduce the felony charges to misdemeanors because of aggravating circumstances, but the parties finally agreed to do so in return for the payment of taxes due; (3) there was no discussion as to civil interest and penalties, because he was only interested in recovering taxes which were due and owing; (4) the interest and penalties were civil in nature and had nothing to do with the criminal prosecution; (5) he did not advise Brennan that payment of the tax would settle all claims the Department had against plaintiff; and (6) he had no authority to negotiate interest and penalties. Schneider testified that the eight counts of the indictment represented eight separate, distinct months for which plaintiff had a responsibility to file a tax return. He said it would be difficult to determine the interest due, because as long as there is some principal outstanding, a percentage of that would accrue as interest. Finally, Schneider indicated that he did not recall the negotiations starting with a higher figure and ending with a compromise between that figure and one offered by Brennan. Rather, he said, the negotiations concerned plaintiff's wish to prevent a felony conviction.

On July 10, 1987, the court entered an order finding for plaintiff and against the defendant. The court concluded, "based solely on the testimony of attorney Brennan," that the negotiations included payment of an amount of restitution in excess of the amount ultimately agreed upon, with the resulting inference that Assistant Attorney General Schneider had the authority to negotiate the final amount of tax, penalties and interest to be collected. The court found that "since plaintiff had the burden of proof by a preponderance of the evidence, it was more likely true than not that attorney Brennan's recollection of the negotiations in an isolated criminal case of this nature would tend to be better than the recollection of an Assistant Attorney General" who was handling numerous cases of this type during this time period even though he indicated he lacked authority to compromise revenue claims and did not do so.

The court also found that, although section 39c of the Civil Administrative Code of Illinois prohibits "any officer or employee of the

Department of Revenue" from compromising a debt due the State, it is silent with regard to the authority of an assistant Attorney General to do so. (Ill. Rev. Stat. 1985, ch. 127, par. 39c.) The court concluded that the assistant Attorney General was not attempting to be deceptive or fraudulent in obtaining the negotiated plea, but rather that plaintiff had a right to be fully admonished as to the important aspects of his plea.

We recognize the trial court heard the testimony and was in a better position to determine the facts. We must give deference to the factual determinations of that court. (*People ex rel. Edwards v. Livingston* (1969), 42 Ill. 2d 201, 247 N.E.2d 417.) However, taking the facts to be as found by the court, the strong public policy against imposing estoppel against the State compels us to hold that the existence of those facts is insufficient as a matter of law to create such an estoppel.

Except in extraordinary circumstances, estoppel cannot be invoked where governmental activities of the State are concerned, particularly those relating to the public revenues. (*Rockford Life Insurance Co. v. Department of Revenue* (1986), 112 Ill. 2d 174, 492 N.E.2d 1278; *Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 220 N.E.2d 415.) Those cases indicate that a public body should be estopped only when that is necessary to prevent fraud or injustice. Moreover, while section 39c of the Civil Administrative Code does not prevent estoppel for one acting with authority from the Attorney General, it supports the strong public policy against compromising or preventing the collection of public revenues. Section 39c provides:

> "Under no circumstances shall any officer or employee of the Department of Revenue compromise any debt due to this State, except in case of actions of the Director after review by the board of appeals provided for by Section 39b20." Ill. Rev. Stat 1985, ch. 127, par. 39c.

Under Federal tax law, neither the acquittal nor the conviction of a taxpayer in a criminal case is a bar to the successful imposition of a civil penalty. (*Helvering v. Mitchell* (1938), 303 U.S. 391, 82 L. Ed. 917, 58 S. Ct. 630.) Subsequently imposing the civil penalty would not affect the taxpayer's right to be free from double jeopardy. In *Helvering*, the Court noted the Revenue Act of 1928 (see 26 U.S.C.A. §145 (1934 ed.); 26 U.S.C.A. §293 (1934 ed.)) contained two separate and distinct provisions, one imposing civil sanctions and one imposing criminal sanctions.

Similarly, the State may conduct separate proceedings to collect monies owed. The order of restitution in the criminal case does

not necessarily satisfy the amount owed in the civil proceedings. When the State is negotiating a criminal plea agreement, it is concerned with arriving at a suitable punishment. However, the general practice in reaching a settlement in a civil case is to put the victim in the same position as if the crime had not occurred. It is irrelevant that the "victim" in this case, the Department, was represented by the Attorney General's office for both the criminal negotiations and the collection of the civil penalty. No case has been cited to us to support plaintiff's position that the criminal plea negotiations preclude the Department's right to obtain civil damages.

We recognize the determination of the trial court that the amount of restitution to be paid was reached by negotiation and that plaintiff may well have understood that the Attorney General was agreeing that no civil payments would be required. However, as the plaintiff admitted he was pleading guilty because he was guilty, any detriment to plaintiff arising from his understanding of the plea agreement is not nearly severe enough to work an estoppel against the State.

■ Because the trial court found sufficient merit to prove plaintiff's complaint by a preponderance of the evidence and granted judgment for plaintiff, we cannot say this action was clearly frivolous. Section 2–611 of the Code of Civil Procedure requires an attorney or party to certify, to the best of his knowledge, information and belief, that the pleading, motion or other information is warranted by existing law. It cannot be said here that plaintiff's argument did not satisfy these requirements. Therefore, an award of attorney fees would be improper.

For the reasons stated the trial court's denial of attorney fees is affirmed. The judgment declaring the Department to be estopped is reversed.

Affirmed in part; reversed in part.

LUND and SPITZ, JJ., concur.