MUSA SWEIS, Plaintiff-Appellant, v. ROGER SWEET, Director of the Department of Revenue, *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—91—2505

Opinion filed January 3, 1995.

Patrick C. O'Day, of Winnetka, and Paul J. Bargiel, P.C., of Chicago, for appellant.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and John A. Morrissey, Assistant Attorney General, of counsel), for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff, Musa Sweis, filed a complaint for a temporary restraining order, preliminary injunction, and permanent injunction against defendants, Roger Sweet, the Director of the Illinois Department of Revenue (Director), and the Illinois Department of Revenue (Department), to prevent the Department from collecting a tax penalty it alleged plaintiff owed. The trial court granted the Department's section 2—619 motion to dismiss (Ill. Rev. Stat. 1989, ch. 110, par. 2—619 (now 735 ILCS 5/2—619 (West 1992))). On appeal, plaintiff asserts: (1) that he should be excused from failing to exhaust his administrative remedies because the Department violated the mandatory requirements of section 12 of the Retailers' Occupation Tax Act (ROTA) (Ill. Rev. Stat. 1979, ch. 120, par. 451 (now 35 ILCS 120/12 (West 1992))) by sending the notice of penalty liability (NPL) to plaintiff instead of his attorney; (2) that the settlement in the criminal action against plaintiff and his corporation was in "full restitution" for all tax liability; (3) that the unamended version of section $13^{1}/_{2}$ (Ill. Rev. Stat. 1979, ch. 120, par. $452^{1}/_{2}$) applies and the Department must first attempt to collect any unpaid taxes from the corporation before pursuing plaintiff; (4) that the record fails to show that the Department has satisfied the necessary requirements for imposing a penalty against him under either the amended or unamended version of section $13^{1}/_{2}$; (5) that the Department cannot collect taxes from plaintiff because a corporate officer's penalty liability under amended section $13^{1}/_{2}$ is derivative from the corporate tax liability; and (6) that the three-year limitations period in section $13^{1}/_{2}$ precludes the issuance of any further penalty notices.

Plaintiff was the president of 55th Street Food and Liquors, Inc. (the corporate taxpayer), which operated a grocery store from March 1980 through April 1981, when it ceased doing business. During 1981, special agent John Novak and auditor Michael Jurisek of the Department conducted an investigation of the corporate taxpayer and, on December 30, 1981, the Department filed a criminal complaint against plaintiff and the corporate taxpayer alleging that the

corporate taxpayer had failed to pay taxes owed under the ROTA and that plaintiff and the corporate taxpayer had filed fraudulent ROTA returns. On or about April 25, 1983, the Department issued a notice of tax liability (NTL) in the amount of $180,644.91 which was apparently sent to both plaintiff and the corporate taxpayer.

On November 5, 1987, in the trial judge's presence, the parties discussed both the civil and criminal liability of plaintiff and the corporate taxpayer. Both Novak and Jurisek from the Department were present. It was agreed that the civil liability of the corporate taxpayer was $22,133.77. Plaintiff then tendered this amount to the Department and the court entered an order on November 5, 1987, which stated: "It is ordered that the $22,133.77 tendered in open Court this date as full restitution stand as good and sufficient good faith deposit for any rehearing requested by the taxpayer before the Illinois Department of Revenue on the civil liability, if any, of the taxpayer."

On September 9, 1988, the Department determined that, under section 13$^{1}$/$_{2}$ of the ROTA, plaintiff was personally liable for the deficient taxes of the corporate taxpayer plus penalties and interest in the amount of $336,428.10 and an NPL was served on plaintiff and also sent to the corporate taxpayer's last known address. That NPL was not sent to plaintiff's attorney even though counsel had filed a power of attorney with the Department on behalf of plaintiff and the corporate taxpayer for any civil or criminal liability for ROTA taxes for 1976-1981.

Under section 5 of ROTA (Ill. Rev. Stat. 1979, ch. 120, par. 444 (now 35 ILCS 120/5 (West 1992))), plaintiff had 20 days in which to protest the NPL and request a hearing. If plaintiff failed to protest within the limitations period, the NPL became a final assessment without further notice. The NPL informed plaintiff of the 20-day protest period and stated that failure to protest within this period "constitutes a waiver of your right to such hearing." Plaintiff took no action. On August 7, 1989, 11 months after sending out the NPL, the Department initiated collection proceedings against plaintiff. On August 31, 1989, plaintiff filed his complaint seeking to enjoin the Department from making any efforts to collect any penalty from him. Plaintiff subsequently filed an amended complaint, and the Department moved to dismiss the complaint pursuant to section 2—619 of the Code of Civil Procedure of 1963. (Ill. Rev. Stat. 1989, ch. 110, par. 2—619 (now 735 ILCS 5/2—619 (West 1992)).) On December 3, 1990, the trial court granted the Department's motion to dismiss.

Plaintiff filed a motion to reconsider and, on July 3, 1991, the trial judge issued a memorandum decision and judgment on

reconsideration which reaffirmed his earlier order granting the Department's motion to dismiss. The trial judge held: (1) that even though plaintiff's attorney had filed a power of attorney with the Department, the service on plaintiff of the NPL was proper "as this was the initial contact with Plaintiff, by the [Department], in respect to the NPL"; (2) that amended section $13^1/2$ which was in effect at the time the Department issued the NPL applied and not unamended section $13^1/2$ which was in effect at the time of the tax liability; (3) that the amount paid on November 5, 1987, was in full restitution for the amounts due in the *criminal* proceedings and did not preclude the Department from initiating *civil* proceedings against plaintiff; (4) that the Department's ability to compel payment of taxes owed by a corporate taxpayer "must necessarily extend to a corporate officer who is deemed liable for the obligation of the taxpayer"; and (5) that plaintiff waived any argument that the Department is barred from pursuing him for the alleged liability because he did not protest the notice.

Plaintiff filed a timely appeal and the circuit court ordered the Department's collection proceedings stayed pending this appeal.

The first issue on appeal is whether the Department violated section 12 of ROTA by mailing the NPL to plaintiff and not his counsel. If the answer is in the affirmative, then the NPL did not become final and plaintiff has not waived his right to contest it. If the answer is in the negative, plaintiff has waived all rights to contest the NPL.

Plaintiff argues that the Department was required to mail the NPL to his attorney because this notice was not the Department's initial contact with him. He asserts that the initial contact occurred in 1981 when the Department instituted criminal proceedings against him and the corporate taxpayer at which time he was represented by counsel. He maintains that he had been continuously represented by counsel up to the time the NPL was issued and the Department knew this.

The Department, on the other hand, argues that the mailing of the NPL was the initial contact with plaintiff with regard to this civil proceeding, which is separate from the criminal action because plaintiff's rights and liabilities are different. In addition, the Department contends that it could not rely on the fact that although plaintiff was previously represented by counsel, he would still be represented by counsel at the time it sent the NPL.

The trial court, after detailing the arguments of both parties, concluded as follows:

> "The Court disagrees with Plaintiff. Service of the NPL on Plaintiff, the person concerned, was proper, as this was the initial contact with Plaintiff, by the DOR, in respect to the NPL."

▓▓ �oNPLs are issued pursuant to section 13¹/₂, which incorporates section 12. Section 13¹/₂ provides in pertinent part:

> "Any officer or employee of any corporation subject to the provisions of this Act who has the control, supervision or responsibility of filing returns and making payment of the amount of tax herein imposed in accordance with Section 3 of this Act and who wilfully fails to file such return or to make such payment to the Department shall be personally liable for such amounts, including interest and penalties thereon, in the event that after proper proceedings for the collection of such amounts, as provided in said Act, such corporation is unable to pay such amounts to the department; and the personal liability of such officer or employee as provided herein shall survive the dissolution of the corporation." (Ill. Rev. Stat. 1979, ch. 120, par. 452¹/₂.)

Section 12 states:

> "Whenever notice is required by this Act, such notice may be given by United States registered or certified mail, addressed to the person concerned at his last known address, and proof of such mailing shall be sufficient for the purposes of this Act. *** Following the initial contact of a person represented by an attorney, the Department shall not contact the person concerned but shall only contact the attorney representing the person concerned." (Ill. Rev. Stat. 1979, ch. 120, par. 451 (now 35 ILCS 120/12 (West 1992)).)

The first issue is when did the Department's "initial contact" with plaintiff transpire: at the time the tax accrued (1981) or at the time the NPL was issued (1988). We must look to the entire Act and nature of it to decide the legislature's intent. *Gill v. Miller* (1983), 94 Ill. 2d 52, 56, 445 N.E.2d 330, 333.

▐ The Act serves to tax those involved in selling tangible personal property at retail. The various sections of the Act strive to attain proper collection. Therefore, the sections must be read as a whole and not individually. Because the purpose of the statute is to collect a tax, the rights and liabilities of the parties accrue at the time the tax becomes due and owing, even though the exact amount of the taxes may not yet have been determined. In this case, the taxes became due in 1980 and 1981. At this time, the corporate taxpayer's liability for the tax was set, the Department was entitled to payment of the tax, and any officers' or employees' potential future liability sprung to life. Section 13¹/₂ clearly designates that personal liability "represents the tax unpaid by the corporation," and this corporate tax is the sole "basis of such penalty liability." The exact amount of the liability is based on either (1) the final or revised final assessment, or (2) the corporate taxpayer's return filed with the Department. Ultimately, section 13¹/₂ is simply another weapon in

the Department's arsenal of methods which enable it to collect the tax imposed by the Act.

■ The Act gives the Department three methods to collect taxes where a corporation has not timely and/or accurately paid its taxes: (1) collect the unpaid amount from the corporate taxpayer under section 5; (2) institute criminal proceedings against the corporate taxpayer and/or responsible officers and employees; and (3) collect the unpaid amount from the responsible officers or employees under section 13$^{1}/_{2}$. Although these alternatives may encompass separate proceedings, they are nonetheless connected and dependent upon the unpaid corporate taxes. Because these proceedings are intertwined and in essence constitute different spokes of the same wheel, we find that initial contact occurs when the Department for the first time advises or notifies an officer or employee that he or she may be potentially liable for any unpaid taxes of the corporation. However, this does not necessarily correspond to the time when the Department issues an NPL.

■ In this case, the Department's initial contact with plaintiff occurred when it filed criminal proceedings against him in 1981. At this time, plaintiff became aware of the nature of the potential liabilities he could face in the future. Because at the time of this proceeding the Department was fully aware that plaintiff was represented by counsel, and because it had in its file a power of attorney, it was required to send the NPL to plaintiff's attorney.

The language of section 5 compels this conclusion. The common, ordinary meaning of "initial" is: "of or relating to the beginning: marking the commencement: *** FIRST." (Webster's Third New International Dictionary 1163 (1981).) In interpreting the language of a statute, courts "cannot read words into a statute unless those words are needed to give effect to the legislature's intent." (*Northern Trust Co. v. Bernardi* (1985), 139 Ill. App. 3d 248, 253, 487 N.E.2d 367, 370, *aff'd & remanded* (1987), 115 Ill. 2d 354, 504 N.E.2d 89.) Section 12 provides for contact with an attorney following the Department's *initial contact* with a person concerned. It does not state "following the Department's initial contact regarding a final assessment, a notice of tax liability, or a notice of penalty liability." The language of the section does not limit the nature of the contact. This implies that once the Department contacts a concerned person relative to taxes for any period, whatever the nature of the proceeding prompting that contact, any time subsequent to this initial contact, the Department must make contact through the attorney. This is true even if the subsequent contact involves a different proceeding from the first. While we acknowledge the expertise of the trial judge, in this case he

appears to have inserted words into the statute which simply are not there. He states: "Service of the NPL on Plaintiff, the person concerned, was proper, as this was the initial contact with Plaintiff *** *in respect to the NPL*." (Emphasis added.) The emphasized words do not appear in the Act and the legislative history does not demonstrate an intent on the part of the legislature to place such a limitation.

Prior to 1975, section 12 allowed the Department to contact and send notices merely to the "person concerned." However, in an effort to provide greater protection for individuals and to ensure that their rights were safeguarded and preserved, Senate Bill 55 was introduced. The debates surrounding this bill clearly indicate that the legislature intended to give greater protection to taxpayers and others concerned against the government's imposition and collection of this tax. (See 79th Ill. Gen. Assem., House Proceedings, June 9, 1975, at 11; June 11, 1975, at 104-06; November 20, 1975, at 72-79; November 21, 1975, at 136-48; Senate Proceedings, June 20, 1975, at 73; November 5, 1975, at 12-16.) While much of the debate centered on the inclusion of the venue language, there was discussion of the language pertinent here. Senator Nudelman stated: "[T]he amendment to Senate Bill 55, requires only that once there has been a proceeding started that the department have contact with *** the respondent's lawyer, if in fact he has a lawyer who has filed an appearance." (79th Ill. Gen. Assem., Senate Proceedings, June 20, 1975, at 73.) The debate in the House is more enlightening. Although quoted by both parties in their briefs, it is worth repeating:

"Madison: Representative Kosinski, ah *** it seems like in the discussion on this Bill an aspect of this Bill has been left out which seems to me to be very important. As I understand it, this Bill also prohibits the Department of Revenue from contacting a person represented by an attorney except from the initial contact. Is that not true?

* * *

Kosinski: Your understanding, Mr. Madison, is perfectly correct. This was in the form of an Amendment offered by Representative Berman on the premise that once the taxpayer is contacted by the Department of Revenue and has the good judgment to turn this over to a competent attorney, in the future, the Department would then deal through the attorney so that the taxpayer is properly represented and the answers are correct. You're right, Mr. Madison.

Madison: Ah *** What is your reaction to the argument, Representative Kosinski, that this procedure interferes with the individual[']s rights of being informed of the status of a suit or hearing?

Kosinski: Ah *** I have a negative reaction to that statement in that the taxpayer is originally contacted. His rights are told him. He knows the subject of the case. He knows the problems of the case and only after that and after consideration of thought does he turn it over to a tax ah *** attorney to represent him, and I think that man is most fitted properly to represent the taxpayer." (79th Ill. Gen. Assem., House Proceedings, November 20, 1975, at 75-76.)

This exchange confirms that the legislature intended, in amending section 12, to protect individuals from such disastrous results as occurred in this case. Although the legislature did not explicitly discuss what it meant by initial contact, the legislature did not limit it to initial contact per notice or proceeding.

In this case, the Department first contacted plaintiff regarding his potential liability for the corporation's 1980-81 taxes when it filed criminal charges against him. At that time, he retained counsel. From this point forward, one can presume that plaintiff was fully aware of his potential liability and determined that it was in his best interests to have counsel's advice and expertise. His counsel in fact negotiated with the Department concerning his personal liability. Because the legislature intended that counsel would be the best party to protect an individual, it demanded that counsel be contacted. Thus, any departmental contact following counsel's involvement and obvious representation of plaintiff in this case was to be made with counsel and not with plaintiff. The Department's argument to the contrary is without merit.

In *Pape v. Department of Revenue* (1968), 40 Ill. 2d 442, 240 N.E.2d 621, the Illinois Supreme Court, although addressing a different issue concerning section 12, stated:

"In *** our opinion *** the Department is *entirely justified in relying upon the information furnished it by the taxpayer* and, in the *absence of notice to the contrary*, may mail notices to taxpayers at their 'last known addresses' as revealed by such information." (Emphasis added.) (*Pape*, 40 Ill. 2d at 452, 240 N.E.2d at 627.)

We believe the same proposition applies here. In the case before us, a power of attorney was on file with the Department for plaintiff, individually, since at least 1986. The Department dealt with counsel in late 1987, in negotiations for plaintiff regarding his personal liability for the unpaid corporate taxes. Most importantly, plaintiff had not advised the Department that the power of attorney was revoked or that it was to contact him personally. Therefore, the Department should not only have relied on the information in its

files, but by the mandates of section 12 was required to rely on the power of attorney and mail the NPL to plaintiff's attorney.

Based on the above, the trial court erred in holding that the Department properly mailed notice to plaintiff instead of his attorney. Because of this, the NPL did not become final by operation of law and plaintiff has not waived his rights to contest the NPL.

The second issue is whether the corporation made "full restitution" for all tax liabilities on November 5, 1987, and therefore, plaintiff cannot be held liable for any additional taxes.

On November 5, 1987, in the judge's presence, the parties agreed that the corporate taxpayer's civil liability was $22,133.77. Both Novak and Jurisek, agents of the Department, were present when the parties came to this agreement. Plaintiff then tendered this amount to the Department and the court entered an order which read: "It is ordered that the $22,133.77 tendered in open Court this date as full restitution stand as good and sufficient good faith deposit for any rehearing requested by the taxpayer before the Illinois Department of Revenue on the civil liability, if any, of the taxpayer." Plaintiff alleged in paragraph 12 of his amended complaint that, at the meeting on November 5, 1987, the parties:

> "12. *** commenced a discussion of the civil and criminal liability of the corporate taxpayer, and of the plaintiff. Each of these participants then agreed, unequivocally and unanimously that, a) the civil liability of the corporate taxpayer was at that time $22,133.77. *b) The Department of Revenue would not proceed against the plaintiff on account of the alleged civil or criminal liability of the corporate taxpayer. c) Payment of the sum of $22,133.77 would constitute full and complete restitution and discharge of any and all civil liability of the corporate taxpayer, and of the plaintiff, for the period in question.*" (Emphasis added.)

By filing a section 2—619 motion, the Department acknowledges that the complaint states a cause of action (*David Blumenfeld, Ltd. v. Department of Professional Regulation* (1993), 263 Ill. App. 3d 981, 983 n.1, 636 N.E.2d 594, 595 n.1), and admits all well-pleaded facts and reasonable inferences as true for purposes of the motion. (*Kirby v. Jarrett* (1989), 190 Ill. App. 3d 8, 13, 545 N.E.2d 965, 968.) The Department merely asserts that certain affirmative matters are still a bar to plaintiff's claim. *Blumenfeld*, 263 Ill. App. 3d at 983 n.1, 636 N.E.2d at 595 n.1.

In this case, we must assume, therefore, that the parties agreed that payment of "full restitution" in the criminal case would satisfy plaintiff's civil liability and that the Department would not proceed against plaintiff in a civil action. However, section 39c of the Civil Administrative Code of Illinois provides:

"Under no circumstances shall any officer or employee of the Department of Revenue compromise any debt due to this State, except in case of actions of the Director after review by the board of appeals provided for by Section 39b20." (Ill. Rev. Stat. 1989, ch. 127, par. 39c (now 20 ILCS 2505/39c (West 1992)).)

Therefore, neither Novak nor Jurisek, the agents of the Department, had the authority to "settle" plaintiff's liability. Additionally, there is a strong public policy against imposing estoppel against the State. (*Marx v. State* (1988), 165 Ill. App. 3d 332, 336, 519 N.E.2d 82, 84.) "Except in extraordinary circumstances, estoppel cannot be invoked where governmental activities of the State are concerned, particularly those relating to the public revenues." (*Marx*, 165 Ill. App. 3d at 336, 519 N.E.2d at 84.) A public body should only be estopped when "necessary to prevent fraud or injustice." *Marx*, 165 Ill. App. 3d at 336, 519 N.E.2d at 84.

In this case, therefore, the "full restitution" paid to settle the criminal liability did not satisfy the amount that plaintiff may have owed civilly. Additionally, there is no evidence of fraud or injustice which would justify imposing estoppel against the State. Moreover, since criminal plea negotiations do not preclude the Department from imposing separate civil damages, defendants' motion to dismiss was properly granted.

■ The third issue is whether the unamended (1981) or amended (1988) version of section 13½ applies to the NPL issued to plaintiff. Plaintiff argues that the time the tax accrued controls, not the time the NPL is issued. He further alleges that statutes are presumed to operate prospectively and since section 13½ changes an officer's liability from derivative to primary, it is substantive. According to plaintiff, this section now imposes new obligations on corporate officers. Finally, plaintiff contends that the provision is penal and must be strictly construed against the government.

The Department argues that the version of section 13½ in effect at the time the Department took action against plaintiff controls; in other words, when it sent plaintiff the NPL. According to the Department, plaintiff had only an expectation that a law will continue as it exists and that there is no vested right in a law remaining the same. Moreover, section 13½ made a procedural change not a substantive change because it simply altered the method by which the Department could collect the ROTA tax, thus, the section can be applied retroactively. Finally, the Department contends that the case of *People v. Parvin* (1988), 125 Ill. 2d 519, 533 N.E.2d 813, provides that this penalty tax is a civil penalty and not a penal penalty.

The trial court agreed with the Department and held: that the

version of section 13$^{1}/_{2}$ in effect in 1988 applied; that the Department was not required to proceed against the corporation before proceeding against plaintiff; and that plaintiff's liability was independent.

We held with reference to the first issue in this appeal that the rights and liabilities of the parties involved arise at the time the tax becomes due and owing and that all subsequent events and efforts to collect the tax are dependent on that time. Therefore, we reject the trial court's finding that the version of section 13$^{1}/_{2}$ in effect in 1988 applies. Instead, we find that the version of section 13$^{1}/_{2}$ in effect at the time the tax was incurred applies in this case. (See also *People v. Parvin* (1988), 125 Ill. 2d 519, 533 N.E.2d 813 (1983 version of section 13$^{1}/_{2}$ applied where tax year at issue was 1983-84); *Department of Revenue v. Heartland Investments, Inc.* (1985), 106 Ill. 2d 19, 476 N.E.2d 413 (1979 version of section 13$^{1}/_{2}$ applied where tax year was 1981 and NTL issued in 1982; statute subsequently amended later in 1981 but court did not apply that version); *Calderwood Corp. v. Mahin* (1974), 57 Ill. 2d 216, 311 N.E.2d 691 (1969 version of section 1 applied where tax year 1969, audit 1970, and NTL 1970).) Based on this finding, the Department was required to comply with the requirements of section 13$^{1}/_{2}$ as it existed in 1981.

■ The fourth issue on appeal is whether the Department satisfied the requirements of section 13$^{1}/_{2}$ under either the 1981 or 1988 version. Plaintiff alleges that the Department did not show wilfulness nor did the Department take "proper proceedings" against the corporation before proceeding against him. The Department argues that the NPL is *prima facie* correct as to wilfulness and that plaintiff must rebut it. In addition, it contends that the proper proceeding was the criminal suit brought against the corporation.

We agree with plaintiff's contention as to the wilfulness allegation. Based on *Griffith v. Department of Revenue* (1994), 266 Ill. App. 3d 838, we hold that the Department did not comply with section 13$^{1}/_{2}$. It did not make an independent showing of wilfulness. The NPL is only *prima facie* evidence of the correctness of the amount of the corporate tax liability. (*Griffith*, 266 Ill. App. 3d at 844.) Therefore, the Department must conduct a hearing on this issue. We, however, do agree with the Department that the criminal proceedings against the corporate taxpayer satisfied the dictates of section 13$^{1}/_{2}$ as to "proper proceedings."

The fifth issue is whether an officer's or employee's liability under the 1988 version of section 13$^{1}/_{2}$ is derivative or independent. Because we find that this version is inapplicable, we need not address this issue.

■ The last issue is whether section 13$^{1}/_{2}$'s three-year statute of

limitations bars the Department from issuing a new NPL to plaintiff's attorney. The final assessment was issued on December 1, 1986. Plaintiff maintains, therefore, that any NPL had to be issued by December 1, 1989. Although the trial court found that plaintiff had waived this issue, based on our finding that the version of the statute in existence in 1980 and 1981 applies, we find that plaintiff's argument is without merit. The 1981 version of section 13¹/₂ which applies in this case did not contain the statute of limitations language. The language was added to the statute by Public Act 82—627, which became effective October 28, 1981. Thus, the statute of limitations is inapplicable to this case. Therefore, plaintiff's argument is rejected.

For the foregoing reasons, the decision of the circuit court of Cook County is reversed and this case is remanded.

Reversed and remanded.

O'CONNOR and BRADEN,[1] JJ., concur.