

# THE ATTORNEY GENERAL
# OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

July 31, 1990

Honorable Garry Mauro              Opinion No.  JM-1201
Commissioner
General Land Office               Re:  Authority of the Veterans'
Stephen F. Austin Bldg.          Land Board to make certain in-
1700 N. Congress Ave.            vestments  (RQ-1833)
Austin, Texas  78701

Dear Mr. Mauro:

Your letter asks:

> Can the Veterans Land Board, under the
> authority granted by TEX. CONST. Article III,
> §§ 49-b and 49-b-1, invest moneys of the
> Veterans Land and Housing Funds not
> immediately committed to paying principal and
> interest on the bonds or to other specified
> purposes, in the following investments, or
> otherwise enter into the following
> transactions, authorized by TEX. NAT. RES.
> CODE §§ 161.173(b) and 162.004:
>
> (a)   A direct security repurchase agreement,
>       § 161.173(b)(4);
>
> (b)   Call option contracts, § 161.173(b)(5);
>
> (c)   Reverse repurchase agreements,
>       § 161.173(b)(6);
>
> (d)   Collateralized mortgage obligations
>       fully secured by securities issued or
>       guaranteed by the Government National
>       Mortgage Association, § 161.173(b)(7)?

Pursuant to sections 49-b and 49-b-1 of article III of
the Texas Constitution, the Veterans' Land Board administers
the Veterans' Land Fund and the Veterans' Housing Assistance
Fund.  See Nat. Res. Code §§ 161.001 et seq.  The veterans'
land fund is used to purchase land for resale to veterans.
See Attorney General Opinion JM-774 (1987).  The veterans'

housing assistance fund  is used for  the purpose of  making home mortgage  loans  to  veterans.   See Attorney  General Opinion JM-289 (1984).   Both funds are augmented by proceeds from bond sales.

Section 49-b of article III states that bonds sold  for the Veterans' Land Fund are to be repaid from it,

> but the  moneys of  said Fund  which are  not immediately  committed  to  the  payment  of principal and  interest  on such  bonds,  the purchase of lands as herein provided, or  the payment of expenses as herein provided may be invested  in  bonds  or  obligations  of  the United States until such funds are needed for such purposes.

Similarly, section 49-b-1(e)  provides that  bonds sold  for the benefit of the Veterans' Housing Assistance Fund are  to be repaid from that fund,

> but the  money  of  the  fund  which  is  not immediately  committed  to  the  payment  of principal and  interest  on such  bonds,  the making  of  home  mortgage  loans  as  herein provided,  or  the  payment  of  expenses  as herein provided may be  invested in bonds  or obligations of  the United  States until  the money is needed for such purposes.

See also Tex. Const. art. III, § 49-b-1(d).

The  question  before  us  is  whether  the  types  of investment about which you inquire are "bonds or obligations of  the  United  States"  within  the  meaning  of  the  two constitutional provisions.   If they are, the legislature may certainly designate which "obligations of the United States" are  suitable  for  investment  on  behalf  of  the  funds;  but  if they are not, the legislature cannot authorize investment in other securities,  disregarding  the  constitutional  intent. See Powell v. State, 17 Tex. Ct. App. 345 (1884).

Section 49-b  of article  III was  added to  the  Texas Constitution in 1946.   Section 49-b-1, creating the  Housing Assistance Fund, was  added in 1983.   Prior to 1956,  there was no constitutional provision concerning the investment of land fund money not  immediately needed for land  purchases. In 1949, when the legislature passed an enabling act for the constitutional provision  adopted  three  years  earlier,  it

provided that moneys set aside to pay principal and interest on its bonds could be invested by the Veterans' Land Board "in bonds of the United States, or the State of Texas, or of the several counties or municipalities or other political subdivisions of the State of Texas." See Acts 1949, 51st Leg., ch. 318 § 9, at 595 (V.T.C.S. art. 5421m, repealed).

Even after section 49-b was amended in 1956, see S.J.R. No. 2, Acts 1955, 54th Leg., at 1811, to state that the "portion of the Veterans' Land Fund not immediately committed for the purchase of lands may be invested in short term United States bonds or obligations until such funds are needed for the purchase of lands," the statute continued to state that fund moneys could be invested in other securities. Cf. Acts 1957, 55th Leg., ch. 238, § 2, at 493. In 1967, article III, section 49-b, was amended to make the investment proviso read, "in bonds or obligations of the United States" See H.J.R. 17, Acts 1967, 60th Leg., at 2984. The same year article 5421m (the former statute) was amended to track that language. See Acts 1967, 60th Leg., ch. 129 § 3, at 271. Later, in 1977, the statute was repealed by the enactment of the Natural Resources Code, which provided in section 161.173(b):

> Money in the fund that is not immediately committed to paying principal of and interest on the bonds, to the purchase of land, or to the payment of expenses as provided in this chapter may be invested in bonds or obligations of the United States until the funds are needed for these purposes.

Acts 1977, 65th Leg., ch. 871 § 1, at 2345. From 1967, therefore, until 1989, the constitutional provision and statutory law were harmonious.

When section 49-b was amended in 1967, the following language was incorporated:

> This Amendment being intended only to establish a basic framework and not to be a comprehensive treatment of the Veterans' Land Program, there is hereby reposed in the Legislature full power to implement and effectuate the design and objects of this Amendment, including the power to delegate such duties, responsibilities, functions, and authority to the Veterans' Land Board as it believes necessary.

H.J.R. 17, Acts 1967, 60th Leg., at 2986. In 1989 the legislature relied upon this language -- twenty-two years after its appearance in the constitution -- as its authority to "clarify and interpret" the constitutional phrase "bonds or other obligations of the United States." It amended section 161.173(b) of the Natural Resources Code to authorize the investment of Land Fund and Housing Assistance Fund moneys in eight categories of financial instruments, four of them about which you have asked. See Acts 1989, 71st Leg., ch. 720, § 2, at 3268.[1]

So long as the section 49-b "investment" provision read "in United States bonds or obligations" it might have been barely arguable that the word "obligations," as used in the constitution, was not intended to be modified by the words "United States." But once the constitutional provision was changed in 1967 to read "bonds or obligations of the United States," there could be no such argument. The provision permits investments of Veterans' Land Fund money, risking loss, only upon the credit of the United States. See U.S. Const. art. I, § 8; cf. Weston v. City Council of Charleston, 2 Pet. 481, 7 L.Ed. 449 (1829).

We do not think the "full power to implement and effectuate the design and objects" of section 49-b includes the power to "clarify and interpret" its provisions in a way at odds with its plain language, or to usurp the interpretive powers of the judicial branch. See Powell v. State, supra; Armadillo Bail Bonds v. State, 772 S.W.2d 193 (Tex. App. - Dallas 1989, no pet.).

---

1. The initial section of the enacting bill declared:

> Article III, Sections 49-b and 49-b-1, of the Texas Constitution established basic frameworks for the veterans land program and the veterans' housing assistance program. Those sections gave the legislature full power to implement and effectuate the design and objects of those sections and the legislature proposes by this Act to clarify and interpret the provisions in those sections authorizing certain money in the veterans land fund and the veterans' housing assistance fund to be invested in bonds or obligations of the United States and to be used to pay certain expenses.

The phrase, "bonds of the United States," refers to credit instrumentalities of the federal government. And the phrase, "obligations of the United States," when coupled with "bonds of the United States," signifies instrumentalities of the same character. See Rockford Life Ins. Co. v. Illinois Dep't of Revenue, 482 U.S. 182 (1987); Smith v. Davis, 323 U.S. 111 (1944).

Long before the phrase, "bonds or obligations of the United States," was utilized in article III, section 49-b, of the Texas Constitution, the characteristics of federal credit instrumentalities were firmly established. In Smith v. Davis, supra, the United States Supreme Court held such instrumentalities to be characterized by (1) written documents, (2) the bearing of interest, (3) a binding promise by the United States to pay specified sums at specified dates, and (4) specific congressional authorization that pledges the faith and credit of the United States in support of the promise to pay. 323 U.S. at 115.

None of the four financial instruments about which you ask meet those criteria. None purchase a binding promise by the United States to pay specified sums at specified dates to the funds. All represent instrumentalities of third parties, not of the United States. They are described by the 1989 act amending section 161.173(b) of the Natural Resources Code as:

> (4) a direct security repurchase agreement under which the board buys, holds for a specified time, and then sells back any investments described in Subdivisions (1) and (2) of this subsection;

> (5) a contract written by the board in which the board grants the purchaser the right to purchase securities in the board's marketable securities portfolio at a specified price during a specified period and for which the board is paid a fee;

> (6) a reverse security repurchase agreement under which the board sells and after a specified time buys back any investments described in Subdivisions (1) and (2) of this subsection;

> (7) a collateralized mortgage obligation fully secured by securities issued or guaranteed by the Government National Mortgage Association (GNMA).

Acts 1989, 71st Leg., ch. 720, § 2, at 3268.

Assuming that the terms, "investments described in subdivisions (1) and (2)" and "securities in the board's marketable securities portfolio," as used in the foregoing excerpts from the amended statute, refer to credit instrumentalities of the United States, the consideration to flow to the fund from each of the contemplated transactions is merely a promise from a third party regarding the manner in which the third party will _deal_ with credit instrumentalities of the United States. Such third party obligations do not become obligations of the United States merely because the _assets_ which are the subject of speculative transactions with the third party are obligations of the United States. _See_ Attorney General Opinions JM-570 (1986); JM-23 (1983) (distinguishing _Bache Halsey Stuart Shields Inc. v. University of Houston_, 638 S.W.2d 920 (Tex. App. - Houston 1982, writ ref'd n.r.e.)); _Cf._ Attorney General Opinion JM-975 (1988). "Investments" in them are not investments in obligations of the United States.

Repurchase agreements concerning federal credit instrumentalities recently have been held _not_ "obligations of the United States" by a number of courts. _Massman Constr. Co. v. Director of Revenue_, 765 S.W.2d 592 (Mo. 1989); _Borg v. Department of Revenue_, 774 P.2d 1099 (Ore. 1989); _In re: Sawyer Estate_, 546 A.2d 784 (Vt. 1987); _Department of Revenue v. Page_, 541 So.2d 1270 (Fla. App. 1989); _Capital Preservation Fund v. Department of Revenue_, 429 N.W.2d 551 (Wis. App. 1988); _Andras v. Illinois Dep't of Revenue_, 506 N.E.2d 439 (Ill. App. 1987), _cert denied_, 485 U.S. 960, 108 S.Ct. 1223 (1988). "Repurchase agreement" is defined by article 842a-2, section 2(c)(3), V.T.C.S., to include direct security repurchase agreements and reverse security repurchase agreements. _Cf._ Educ. Code § 53.02(11).

A "call option" is a promise to sell a security in the future at a price fixed today. The seller agrees to deliver the security for a set price (the "strike price") during a limited time. As described by the United States Court of Appeals for the Seventh Circuit:

> The buyer pays a sum (the 'premium') for the [call option]. The strike price exceeds the current market price of the security. Sellers are betting that the price will not exceed the strike price during the duration of the option; buyers are betting that it will.

Board of Trade of City of Chicago v. Securities and Exchange Comm'n, 883 F.2d 525, 527 (7th Cir. 1989). A call option contract is not an "obligation of the United States."

Nor do we think that collateralized mortgage obligations secured or guaranteed by the Government National Mortgage Association are "obligations of the United States." Rockford Life Ins. Co. v. Illinois Dep't of Revenue, supra. A brief submitted with your request suggests that because a regulation promulgated by the Office of the Comptroller of the Currency, 12 C.F.R. § 1.110, defines "obligations of the United States" for some purposes to include "obligations issued, insured, or guaranteed by a department or an agency of the United States," the language of the Texas Constitution should be construed as broadly. The regulation you cite was adopted in 1982. Consequently, it is not useful in interpreting language in the Texas Constitution that was adopted in 1967. The Rockford and Smith cases, in contrast, significantly predate the 1967 amendment to article III, § 49-b. We think those Supreme Court cases are more reliable sources for determining the legislature's and the voters' understanding of the phrase "obligations of the United States." Therefore, we conclude that mortgages guaranteed by the GNMA are not "obligations of the United States" for purposes of article III, section 49-b, of the constitution.

The meaning of "bonds or obligations of the United States" as used in article III, section 49-b, of the Texas Constitution was fixed by previous decisions of the Supreme Court of the United States at the time the phrase was added to section 49-b in 1967. See Powell v. State, supra. It was not changed by the use of the same phrase in section 49-b-1 when that section was adopted in 1983. (Section 162.004 of the Natural Resources Code merely states that Housing Assistance Fund money "may be invested in investments authorized for the veterans land fund.") The phrase meant in 1967, and means now, credit instrumentalities of the federal government, Smith v. Davis, supra, and it is beyond the power of the legislature to give it a different meaning by legislative "clarification and interpretation."

   Powell v. State, supra, involved a statute purporting to interpret constitutional language in a way that departed from the established meaning. The holding in Powell was explained by the Texas Court of Criminal Appeals in Lyle v. State, 193 S.W. 680, 682 (Tex. Crim. App. 1917):

> After the adoption of the Constitution of 1845 the Legislature passed a statute declaring the term 'jeopardy' to have a meaning therein given, and in the case of Powell v. State, the decision was that this statute was void because the definition of 'jeopardy' which it undertook to make was different from the meaning which the term had prior to the adoption of the Constitution and which the Constitution by its adoption without change of the term had made its own definition.

See also Armadillo Bail Bonds v. State, supra (usurpation of judicial powers).

   In our opinion, section 161.173(b), as amended, contravenes sections 49-b and 49-b-1 of article III of the Texas Constitution insofar as it purports to permit the investment of moneys in the Veterans' Land Fund or the Veterans' Housing Assistance Fund in direct security repurchase agreements, call option contracts, reverse repurchase agreements, or collateralized mortgage obligations.

## S U M M A R Y

> The Veterans' Land Board may not invest moneys of the Veterans' Land Fund or the Veterans' Housing Assistance Fund in direct security repurchase agreements, call option contracts, reverse repurchase agreements, or collateralized mortgage obligations. Insofar as section 161.173(b) of the Natural Resources Code, as amended, purports to authorize such transactions, it is violative

of sections 49-b and 49-b-1 of article III of
the Texas Constitution.

Very truly yours,

JIM   MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Bruce Youngblood
Assistant Attorney General